**In re Randy Eugene TUDERS and Teresa Truesdell Tuders, Debtors.**

**Earl P. UNDERWOOD, Jr., Trustee, Plaintiff,**

v.

**KENSINGTON MORTGAGE &**

FINANCE COMPANY,
Defendant.

Bankruptcy No. 86–9038.

Adv. No. 87–0069.

United States Bankruptcy Court,
N.D. Alabama.

Aug. 31, 1987.

Jadie M. Boozer, Anniston, Ala., for debtors.

Earl P. Underwood, Jr., trustee, Anniston, Ala., pro se.

Patrick Lavette, Birmingham, Ala., for creditor.

FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER ON MOTIONS
FOR SUMMARY JUDGMENT

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

The above-styled adversary proceeding is before the Court on the trustee's complaint to avoid the interest of the defendant, Kensington Mortgage and Finance Company (Kensington), in and to certain property of the debtors, pursuant to 11 U.S.C. § 544. The parties filed cross-motions for summary judgment which came before the Court for a hearing on May 26, 1987. The relevant facts are undisputed and are as follows:

1. On January 19, 1983, the debtors, Randy and Teresa Tuders, executed a retail installment contract and security agreement whereby they granted to A & C Mobile Homes of Fayetteville, North Carolina, a security interest in and to a 1982 Manson Town and Country Mobile Home, Serial No. MHC NC 80316, which security interest was assigned to Kensington, the defendant herein.

2. Kensington duly perfected its security interest in the mobile home pursuant to North Carolina law by having its status as lienholder noted on the certificate of title issued by the Department of Transportation, Division of Motor Vehicles of the State of North Carolina.

3. On March 1, 1984, the debtors moved the mobile home from North Carolina to Alabama, where it has remained continuously through the present time.

4. On September 12, 1985, the debtors paid to the Commissioner of Licenses of Calhoun County, Alabama, a mobile home registration fee, whereupon they received a registration tag and tax receipt.

5. Since the removal of the mobile home to Alabama, Kensington has taken no action to perfect its security interest therein, other than to maintain possession of the certificate of title issued by the State of North Carolina.

6. The debtors filed a petition pursuant to 11 U.S.C., chapter 7, on November 6,

1986, and said case is presently pending under said chapter in this Court.

*Discussion—*

The trustee contends that he has an interest in the debtors' mobile home which is superior to that of Kensington, based on 11 U.S.C. § 544, which provides, in pertinent part, as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such creditor exists;[1]

Section 544 thus permits the trustee to avoid security interests which were not perfected as of the date of the commencement of the bankruptcy case.[2]

The question before the Court is whether, based on the facts as presented, the retention by Kensington of the North Carolina certificate of title was sufficient to maintain the perfected status of its security interest in the mobile home following the removal of the collateral from North Carolina to Alabama and the events which occurred thereafter. The applicable provision of the Uniform Commercial Code, as adopted in Alabama, states as follows:

(a) This subsection applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

§ 7–9–103(2)(a) & (b), Code of Ala. (1975, 1984 Replacement Vol.). Thus, based upon the language of § 7–9–103(2)(b), it is obvious that Kensington's possession of the North Carolina certificate of title would have effectively preserved for Kensington the perfected status of its security interest beyond July 1, 1984, only if the debtors failed to have the mobile home registered in Alabama.

Kensington argues that the debtors' payment of the registration fee with regard to the mobile home on September 12, 1985, did not constitute a "registration" of the mobile home in Alabama, so as to render ineffective, for perfection purposes, the North Carolina certificate of title.[3] According to Kensington, the mobile home could only be "registered" in Alabama, as that term is used in § 7–9–103(2)(b), by the issuance of a second certificate of title by the State of Alabama.

The trustee, on the other hand, contends that the mobile home was registered in Alabama, within the meaning of § 7–9–103(2)(b), when the debtors paid the registration fee and obtained the registration tag and tax receipt with regard thereto. In support of this contention, the trustee points out that while mobile homes are exempt from certificate-of-title laws in Ala-

---

**1.** 11 U.S.C. § 544(a)(1) (1979 & Supp.1987).

**2.** *See,* § 7–9–301(1)(b) and (3), Code of Ala. (1975, 1984 Replacement Vol.).

**3.** Kensington also stated, both in its brief and during oral arguments, that the debtors re-

moved the mobile home from North Carolina without the consent of Kensington but conceded at the hearing on May 26, 1987, that the lack of consent is irrelevant to the question before the Court.

bama,[4] a mobile home owner is required to pay an annual registration fee, whereupon he or she receives a tag to be displayed on the mobile home.[5]

The Court agrees with the trustee that the term "registered" as it appears in § 7–9–103(2)(b) is not synonymous with the issuance of a certificate of title. This conclusions is supported by the separate and distinct statutory requirements and procedures for the registration[6] of motor vehicles, on the one hand, and the procurement of a certificate of title[7] therefor, on the other. The distinction between the registration of motor vehicles and the issuance of the certificates of title therefor was likewise noted, by implication, in the legislative history to § 9–103 of the Uniform Commercial Code. The drafters of that section recognized that reliance on certificates of title as the exclusive means of determining priority of conflicting interests in motor vehicles is impossible, due, in part, to a lack of uniformity of state title laws. The drafters noted that "mobile homes are not always registered and title certificates are not always issued even in a state which *may have* certificate laws applicable thereto, because the certificate of title laws may apply only if the mobile homes use the highways."[8] (emphasis added). They pointed out that § 9–103(2)(b) thus "provides that the [foreign] certificate ceases to control after four months following removal *if reregistration has occurred....*"[9] (emphasis added).

*Conclusions by the Court—*

Based on the foregoing, the Court concludes that upon paying the mobile home registration fee on September 12, 1985, the debtors "registered" the mobile home at issue herein within the meaning of § 7–9–103(2)(b), that the perfection of Kensington's security interest lapsed as a result of such registration, and that the trustee may avoid Kensington's unperfected security interest in the mobile home pursuant to 11 U.S.C. § 544(a)(1).

*Order*

Therefore, for good cause found, it is ORDERED by the Court that the motion of the plaintiff-trustee for summary judgment is granted, that the defendant's motion for summary judgment is denied, and that a copy of these findings and order shall be sent through the United States mails to each of the following (which shall be sufficient service and notice hereof): the debtors, the debtors' attorney, the defendant's attorney, the trustee, and the bankruptcy administrator.

---

**4.** § 32–8–31, Code of Ala. (1975, 1983 Replacement Vol.)

**5.** § 40–12–255, Code of Ala. (1975, 1985 Replacement Vol.)

**6.** § 40–12–240, *et seq.*, Code of Ala. (1975, 1985 Replacement Vol.)

**7.** § 32–8–30, *et seq.*, Code of Ala. (1975, 1983 Replacement Vol.)

**8.** U.C.C. § 9–103 (1972) Official Comment 4(b).

