In re John Harrison **RAMEY** d/b/a Johnny's, Debtor.

**Bankruptcy No. 3–88–01142.**

United States Bankruptcy Court, E.D. Tennessee.

Nov. 23, 1988.

MEMORANDUM ON TRUSTEE'S OBJECTION TO CLAIM OF FARMERS STATE BANK

RICHARD S. STAIR, Jr., Bankruptcy Judge.

On June 10, 1988, Farmers State Bank (Farmers) filed a secured claim in the amount of $89,006.89. Farmers asserts a mortgage on real estate in Johnson County, Tennessee, owned jointly by the debtor and his wife, together with a lien on the following vehicles owned by the debtor: a 1982 Freightliner tractor; a 1975 International tractor; a 1981 International tractor; a 1980 International tractor; and two 1978 Fruehauf trailers.[1] On June 30, 1988, the trustee, William L. Lancaster, III, filed an objection to Farmers' claim. The trustee's objection is grounded upon his contention that Farmers' security interest in the six vehicles is unperfected because its liens are not noted on certificates of title issued by the State of Tennessee.[2] The trustee's contention that his interest in the vehicles is superior to the interest of Farmers is thus premised upon the "strong arm" provisions of § 544(a) of the Bankruptcy Code.[3]

All facts and documents essential to a determination of the issues raised by the trustee's objection have been stipulated by the parties through the filing of a written stipulation on August 30, 1988.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West Supp.1988).

I

On December 3, 1987, the debtor and his wife, Cheryl Ramey, executed a note in favor of Farmers in the amount of $87,654.00. On December 4, 1987, the debtor signed two security agreements granting

Weller, Miller, Carrier, Miller & Hickie, Samuel B. Miller, II, Johnson City, Tenn., for William L. Lancaster, III, Trustee.

Grayson, Hawkins & Wright, George T. Wright, Mountain City, Tenn., for Farmers State Bank.

1. These four tractors and two trailers will be collectively referred to throughout this Memorandum as "motor vehicles" or "vehicles."

2. It is undisputed that the vehicles are motor vehicles as defined under Tennessee's registration and certificate of title laws.

3. Bankruptcy Code § 544(a) provides in material part:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

11 U.S.C.A. § 544(a) (West Supp.1988).

Farmers a security interest in the six motor vehicles.[4] Thereafter, the debtor applied for certificates of title in the Commonwealth of Virginia and on December 11, 1987, Virginia issued a certificate of title for each vehicle. Farmers' lien is noted on each of the six certificates of title as is the debtor's name and address in Mountain City, Tennessee.

Farmers has its principal place of business in Mountain City, Tennessee. The debtor is a resident of and operates his trucking business out of Mountain City, Tennessee. The vehicles are used for hauling in Tennessee, North Carolina, Virginia, and elsewhere. The debtor's stipulated testimony is that the vehicles were titled in Virginia "because it is cheaper" than in Tennessee and that at the time the loan was made Farmers was apprised that the vehicles would be titled in Virginia. It is undisputed that all transactions relative to the December 3, 1987 loan from Farmers took place in Tennessee.

## II

The trustee contends that Farmers permitted the six vehicles to be titled in Virginia contrary to Tennessee's motor vehicle registration and certificate of title laws. His argument is twofold: (1) that Farmers acted in bad faith and does not deserve the protection of the laws of the State of Tennessee relative to perfection of a security interest in motor vehicles; and (2) that Farmers' security interests are, in fact, unperfected.

Tenn.Code Ann. §§ 55–3–101(a), 105, 123, 125, and 126 (1980 and Supp.1988) provide in material part:

> **55–3–101. Motor vehicles subject to registration and certificate of title provisions—Exceptions.—**(a) Every motor vehicle ... when driven or moved upon a highway ... shall be subject to the registration and certificate of title provisions of chapters 1–6 of this title, except.... [5]

> **55–3–105. Sales or use tax receipt to accompany application for certificate**

of title.—It shall be unlawful for a county clerk in this state to accept an application for a certificate of title as provided for in chapters 1–6 of this title, unless the applicant shall present evidence that a sales or use tax at the rate specified in §§ 67–3003 and 67–3016, has been paid on the sales price of the vehicle by such applicant, or such applicant has authority from the commissioner of revenue to file an application for a certificate of title without the payment of the sales or use tax.

> **55–3–123. Liens to be noted on certificates of title—Division entering lien.—** When any new lien, other than a lien dependent solely upon possession, or a lien of the state for taxes established pursuant to chapter 60 of title 67, is placed on any motor vehicle coming within the title provisions of chapters 1–6 of this title in a transaction not involving any change of ownership, the owner shall deliver his certificate of title, if in his possession, on to the lienor, who shall forward the same, together with the required fee for noting his lien thereon, with such proof of his lien as may be required by the reasonable rules and regulations of the commissioner directly to the division, and the division, when satisfied of the lienor's right to have his lien noted on the certificate of title, shall note the said lien thereon and return the certificate of title to the said lienor....

> **55–3–125. Liens and encumbrances—Filing.—**No conditional sales contract, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession entered into after March 1, 1951, or a lien of the state for taxes established pursuant to chapter 60 of title 67, shall be valid against the creditors of an owner or subsequent purchasers or encumbrancers until the requirements of this section and § 55–3–126 have been complied with, unless such creditor, purchaser, or encum-

---

4. Four vehicles are included in one security agreement. Two are on the other. The debtor's wife is not a party to either security agreement.

5. Seven exceptions are noted: none are applicable to the instant case.

brancer has actual notice of the prior lien.

**55–3–126. Constructive notice of lien upon filing request for notation—Method of giving notice.**—(a) Such filing and the notation of the lien or encumbrance upon the certificate of title as provided in chapters 1–6 of this title shall constitute constructive notice of all liens and encumbrances against the vehicle described therein to creditors of the owner, to subsequent purchasers and encumbrances except such liens as may be authorized by law dependent upon possession....

(b) Notwithstanding any provisions of the law to the contrary, the method provided in this section and § 55–3–125 of certifying a lien or encumbrance upon a motor vehicle ... subject to the provisions of chapters 1–6 of this title relative to the issuance of certificates of title shall be exclusive....

In summary, the Tennessee motor vehicle laws require three things: (1) the registration and issuance of certificates of title respecting vehicles operated within the state;[6] (2) proof upon application for a certificate of title that the required sales or use tax has been paid; and (3) perfection of a security interest by notation of a lien on the certificate of title.

The trustee initially argues that as the note and security agreements were entered into between the debtor and Farmers in Tennessee and inasmuch as the debtor lives in and operates his business in Tennessee, the Tennessee motor vehicle laws require that the debtor register his vehicles and obtain certificates of title in Tennessee. The court concludes that the trustee is correct. However, the debtor's noncompliance with Tennessee's registration and certificate of title laws is not dispositive of the trustee's objection.

Based on a case out of this district, *Ford Motor Credit Company v. Ken Gardner Ford Sales, Inc. (In re Ken Gardner Ford Sales, Inc.),* 10 B.R. 632 (Bankr.E.D.Tenn. 1981), the trustee next argues that Farmers is secured only to the extent appropriate taxes were paid to the State of Tennessee. As no taxes were paid, the trustee postulates that Farmers' security interest is unperfected. *Gardner,* holding in part that a debtor's floor plan financer had a secured interest only to the extent of the amount for which the Tennessee privilege tax had been paid upon recordation of the creditor's UCC–1 financing statement, has no application to the case sub judice. In the first instance, *Gardner* deals with payment of a privilege tax in an amount required by Tenn.Code Ann. § 67–4102, Item S(b) (1976)[7] upon the filing of financing statements. Secondly, and conclusively, the 1987 amendments to Tenn.Code Ann. § 67–4–409 (Supp.1988), formerly Tenn. Code Ann. § 67–4102 (1976), added subsection (b)(10)(A) which provides:

Nonpayment or underpayment of tax on an indebtedness, or failure timely to pay tax on an increase in indebtedness, shall not affect or impair the effectiveness, validity, priority, or enforceability of the security interest or lien created or evidenced by the instrument, it being declared the legislative intent that the effectiveness, validity, priority, and enforceability of security interest and liens are governed solely by law applicable thereto and not by this title.

By this amendment, the Tennessee legislature effectively overruled *Gardner.*

## III

Provisions of Article 9 of the Uniform Commercial Code as enacted in Tennessee are applicable to the issue confronting the court. Tenn.Code Ann. § 47–9–103(2) (Supp.1988) provides in material part:

**(2) Certificate of Title.**

(a) This subsection applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

---

6. Subject to the seven exceptions noted in Tenn. Code Ann. § 55–3–101(a) (1988), *supra.*

7. Now Tenn.Code Ann. § 67–4–409 (Supp.1988).

(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until four (4) months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

Paragraph (a) makes the entire subsection applicable to motor vehicles titled in Tennessee and in states other than Tennessee provided the foreign state requires notation of a security interest on the certificate of title as a condition of perfection. Paragraph (b) of subsection (2) provides that a security interest properly perfected under the certificate of title laws of a foreign state remains perfected in Tennessee "until four (4) months after the goods are removed from that jurisdiction" to Tennessee and for an additional period of time until the vehicle is registered in Tennessee.

Section 46.1–70, Code of Virginia, provides in part:

Security interests (other than a security interest in inventory held for sale) created in motor vehicles, trailers or semi-trailers by the voluntary act of the owner after the original issue of title to the owner must be shown on the certificate of title.

Farmers contends that as Virginia Code § 46.1–70 requires notation of a security interest on a certificate of title as a condition of perfection, its security interests are properly perfected in Virginia and therefore remain perfected in Tennessee under the provisions of Tenn.Code Ann. § 47–9–103(2)(b) (Supp.1988). However, the trustee, in his brief, alludes to the fact that the debtor's vehicles were not originally located in Virginia and, therefore, could not have been "removed" from Virginia to Tennessee as is contemplated by the Tennessee statute.

In *Woodson v. Community Bank & Trust Company (In re B & S Motor Freight)*, 59 B.R. 259 (Bankr.N.D.Okla. 1986), the court construed Oklahoma's version of U.C.C. § 9–103(2)(b). In *B & S*, the debtor, whose principal place of business was Oklahoma, purchased nine tractors and one semitrailer in Oklahoma. In order to avoid higher Oklahoma taxes, the debtor titled the ten vehicles in Illinois. The court, citing Okla.Stat. tit. 12A, § 9–103.1(2), the equivalent to Tenn.Code Ann. § 47–9–103(2)(b) (Supp.1988), ignored the removal language in the statute and found that the creditor's liens, noted on the Illinois certificates of title, were validly perfected under Illinois law and were, therefore, superior under Oklahoma law to the rights of the trustee in bankruptcy. This court is also not concerned with whether the debtor's vehicles were or were not "removed" from Virginia to Tennessee. The multi-state use of motor vehicles, especially tractors and trailers of the kind present in the case sub judice, make it difficult if not impossible to fashion a workable definition for the term "removal."

The Sixth Circuit has considered two cases with facts similar to those confronting the court in the instant proceeding: *Uhle v. Parts & Trucks (In re Paige)*, 679 F.2d 601 (6th Cir.1982) and *Yampolsky v. White Motor Credit Corp. (In re Angier)*, 684 F.2d 397 (6th Cir.1982). *Paige* was decided May 26, 1982, *Angier*, August 4, 1982.

In *Paige*, the debtor, a resident of Michigan, purchased a truck tractor in Indiana from a dealer which assigned its security interest to Associates Commercial Corporation (Associates). Associates, by virtue of the terms of its security agreement, was aware that the debtor resided in Michigan. Claiming an Illinois address, the debtor obtained an Illinois certificate of title upon which Associates' lien was noted. The trustee in bankruptcy sought a determination that Associates' security interest, evidenced on the Illinois certificate of title, was unperfected under Michigan law. The Sixth Circuit, reversing a decision of the

district court affirming a bankruptcy court finding that Associates' security interest was unperfected under Michigan law, considered § 440.9103(4) of the Michigan Code [8] which provided:

> Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.

The court noted:

> A literal reading of section 9–103(4) indicates that it should be applied whenever a certificate of title is issued by a foreign jurisdiction which as a condition of perfection requires notation of the security interest on the certificate.

*Paige* at 602.

The Sixth Circuit found that Associates' lien, properly noted on the Illinois certificate of title, was perfected under Michigan law because Illinois required indication on a certificate of title as a condition of perfection.

In rejecting an argument that the notice policy of Article 9 would be destroyed if purchasers of motor vehicles were permitted to register vehicles in a jurisdiction other than their residence or principal place of business, the *Paige* court quoted with approval the following comments of the district court in *In re Dawson*, 21 U.C. C.Rep. 293 (U.S.D.C. E.D.Mo.1976):

> [Section 9–103(4)] is applicable only when a title is issued by a state whose laws require, in order to perfect a lien on a motor vehicle, that the lien be noted on the title. Laws providing for the registration and titling of vehicles are now, and have been for some time, commonplace, and prospective lenders are generally aware of their existence. Any such lender, preparing to extend credit to the owner of a vehicle used in multi-state commerce (if the ownership, and the val-

ue, of the vehicle are important factors in the credit transaction), will most assuredly ask his prospective debtor for his registration and title papers to such a vehicle, and begin his credit investigation, in respect of liens, in the certificating state.... This, it seems to me, is what § 9–103(4) comprehends, a scheme in accordance with and not incompatible to the notice concepts of the UCC.

*Paige*, 679 F.2d at 603, quoting *In re Dawson*, at 299.

The court further noted:

> [A] literal interpretation of section 9–103(4) does no real harm to the notice policy of the U.C.C. ... The introduction of a standard which requires the certificating state to be the state of the debtor's chief place of business may cast uncertainty on the perfection of security interests in vehicles used in more than one jurisdiction. The advantage of a literal interpretation of section 9–103(4) is that a potential creditor need look only to one place—the certificate of title—to discover prior security interests. If the debtor cannot or will not produce the title certificate the potential creditor is immediately on notice that he acts at his own risk.

*Paige* at 603.

In *In re Angier*, the Sixth Circuit was confronted with another Michigan debtor who purchased a vehicle in Michigan and used an Ohio address to obtain an Ohio certificate of title. Relying upon its decision in *Paige*, the court found that the Ohio certificate of title evidencing the creditor's security interest was valid and reversed the district court's decision affirming the finding of the bankruptcy court that the vehicle should have been titled in Michigan. Commenting on both *Paige* and *Dawson*, the *Angier* court noted:

> [I]n both cases, the court looked to the purpose of Article Nine of the Uniform Commercial Code—notice to subsequent creditors. Here, as in those cases, the notation of [the] security interest on the

---

**8.** U.C.C. § 9–103(4), 1962 version, and predecessor to U.C.C. § 9–103(2)(b) as embodied within the 1972 amendments.

Ohio Certificate of Title fulfills that purpose. A potential creditor need look to only one place—the certificate of title, regardless of issuing state—to discover this prior security interest.

*In re Angier,* 684 F.2d at 399.

The Official Comments to subsection (2) of § 9–103 of the Uniform Commercial Code 1987 Official Text provides at Comment 4(a):

> Where the collateral is an automobile or other goods covered by a certificate of title issued by any state and the security interest is perfected by notation on the certificate of title, perfection is controlled by the certificate of title rather than by the law of the state wherein the security interest attached (subsection (2)).

*See also* U.C.C. § 9–103, Reasons For 1972 Change (1972), which provides:

> The basic rule of this section is that the controlling law, as to perfection of the security interests and the effect of perfection or non-perfection, is the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected (paragraph (1)(b)). There are certain exceptions: ... (ii) *Where the collateral is covered by a certificate of title, perfection will be governed by the law of the issuing jurisdiction (subsection (2)).* (iii) If the collateral is certain mobile goods or certain intangibles, perfection will be governed by the law of the jurisdiction wherein is located the debtor (subsection (3)). (emphasis added).

*See U.C.C.* 10th ed. 1987 Pamphlet, Appendix II, at p. 939 (West 1987).

The underlying policy of the Uniform Commercial Code and Article 9 in particular supports the Sixth Circuit's construction of U.C.C. § 9–103(4) in *Paige* and *Angier.* These holdings, although applicable to the 1962 version of the Uniform Commercial Code, are logically extended to the 1972 amendments where the language of U.C.C. § 9–103(2)(b) is substantively identical to U.C.C. § 9–103(4). Furthermore, Tenn.Code Ann. § 47–1–102(1) (1979) provides: "Chapters 1 through 9 of this title shall be liberally construed and applied to promote its underlying purposes and policies."

## IV

The trustee's argument that Farmers, by failing to require compliance with Tennessee's motor vehicle registration and certificate of title laws which facially require registration and titling of the debtor's vehicles in Tennessee, cannot avail itself of the provisions of Tenn.Code Ann. § 47–9–103(2)(b) (Supp.1988), is without merit.

In enacting Tenn.Code Ann. § 55–3–101 (1980) and Tenn.Code Ann. § 47–9–103(2) (Supp.1988), the Tennessee legislature provided alternative methods by which security interests in motor vehicles may be perfected in Tennessee: (1) by compliance with the Tennessee motor vehicle laws requiring registration and applications for certificates of title with the secured party's lien noted thereon as required by Tenn.Code Ann. § 55–3–125 and 126 (1980 and Supp. 1988); (2) by notation of the secured party's lien on certificates of title issued in conformity with the laws of any other certificate of title state as required by Tenn. Code Ann. § 47–9–103(2) (Supp.1988). The debtor in the instant case chose the latter alternative. The fact that the debtor may have avoided the imposition of higher taxes imposed by the State of Tennessee by registering and titling his vehicles in Virginia is of no consequence to the perfection question. As is noted by the Sixth Circuit:

> Finally, appellee argues that Angier committed fraud by titling the truck in Ohio to avoid paying Michigan sales tax. However, the fact that Angier successfully avoided paying sales tax on the truck does not per se constitute fraud. Any determination of tax liability lies with the proper state authorities. In any event, we see no connection between Angier's tax liability and the validity of his Ohio Title. The Uniform Commercial Code was not drafted to enforce local tax laws but to protect commercial transactions. Under Article Nine of the Uni-

form Commercial Code fraud means a fraud on future creditors. As we have noted, there is adequate notice to future creditors in the present case.

*Angier,* 684 F.2d at 400.

If the State of Tennessee is dissatisfied with the avoidance of taxes by the registration and titling of the debtor's vehicles in Virginia, it can presumably act to recover those taxes. However, the alleged violation of the Tennessee registration and certificate of title law has no effect on the perfection or nonperfection of Farmers' security interest in the debtor's vehicles.

### V

Tenn.Code Ann. § 47–9–103(2) (Supp. 1988) requires a determination that Farmers' security interest in the six vehicles described in the December 4, 1987 security agreements, properly perfected in Virginia, is properly perfected in Tennessee. The trustee's objection to Farmers' secured claim will accordingly be denied.

This Memorandum constitutes findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052.