In re Marlin H. MURRAY and Karla K. Murray, Debtors.

Randall L. FRANK, Trustee, Plaintiff,

v.

NORBEL CREDIT UNION, a Colorado banking corporation, Defendant.

Bankruptcy No. 88–09777.
Adv. No. 88–9131.

United States Bankruptcy Court,
E.D. Michigan, N.D.

Aug. 25, 1989.

Randall L. Frank, Bay City, Mich., for plaintiff.

Molly P. McIntyre, Rochester, Mich., for defendant.

## MEMORANDUM OPINION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ARTHUR J. SPECTOR, Bankruptcy Judge.

This matter is before the Court on the parties' cross-motions for summary judg-ment. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(K) and the following con-stitutes our findings of fact and conclu-sions of law as required by Bankruptcy Rule 7052. The facts are not in dispute and are as follows.

In 1984, the debtors purchased a 1985 GMC pickup truck, VIN # 1GTDC14H4FJ523703. At that time, the debtors were residents of Colorado. The purchase of the truck was financed by de-fendant, Norbel Credit Union (Norbel). Norbel perfected its security interest in the vehicle under Colorado law and its name appears on the vehicle's Colorado certifi-cate of title. The debtors moved to Michi-gan in January, 1988 and obtained a Michi-gan "memo" registration and Michigan registration plates for the truck; debtors did not obtain a Michigan certificate of title. More than four months later, on October 18, 1988, the debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code. On November 23, 1988, the trustee filed this action to avoid the defendant's security interest in the truck. The trustee's position is based upon his strongarm powers in 11 U.S.C. § 544(a) and Mich.Comp.Laws § 440.9103(2)(b).[1] The latter provides that a security interest in a vehicle which is perfected by a notation on a certificate of title remains perfected for a minimum of four months after a debtor has removed the vehicle from the state from which the title issued. Subsequent to this four month period, should the vehicle be "registered" in another state without an indication of the creditor's security inter-est, that creditor's interest is then unper-fected.

The question presented here is a narrow one. When a debtor obtains a Mi-chigan "memo" registration for a vehicle removed more than four months from, but still titled in, Colorado, is the vehicle "reg-istered" for purposes of U.C.C. § 9–103(2)(b) in Michigan so as to render a security interest noted on the Colorado title

1. This Michigan statute adopts the 1972 version of Uniform Commercial Code § 9–103(2)(b) ex-actly. We will refer to the two interchangeably in this opinion.

unperfected? This is the paramount question since the trustee's interest would be superior to Norbel's if the defendant's security interest was unperfected on the day the Murrays filed bankruptcy. Mich.Comp. Laws § 440.9301(1)(b). The trustee is particularly convinced that Norbel's security interest is unperfected since a purchaser at a sheriff's execution sale would be able to secure a clear title to this vehicle simply by presenting a bill of sale signed by the sheriff.[2]

■ U.C.C. § 9–103(2)(b) and the four-month perfection period is not designed to destroy security interests; rather, it is meant to assure that the marketplace not be chilled by worries over perfected, but secret, liens on vehicles. In short, "the purpose of Article Nine of the Uniform Commercial Code [is] notice to subsequent creditors." *In re Angier*, 684 F.2d 397, 399 (6th Cir.1982). In *Angier* and *In re Paige*, 679 F.2d 601 (6th Cir.1982), the Sixth Circuit addressed concerns about the status of a security interest noted on a vehicle's certificate of title where the title was issued by a state other than the debtors' principal place of business. In both cases, the courts concluded that "[t]he introduction of a standard which requires the certifying state to be the state of the debtor's chief place of business may cast uncertainty on the perfection of security interests in vehicles used in more than one jurisdiction." *Paige*, 679 F.2d at 603. To avoid such uncertainty, the court recognized the advantage of requiring potential creditors to look only to the certificate of title for prior security interests. "If the debtor cannot or will not produce the title certificate, the potential creditor is on immediate notice that he acts at his own risk." *Id.*[3]

■ It is unfortunate that the drafters of the Uniform Commercial Code used a word—"registered"—which is so similar to the common name of a necessary document—a "registration" (see Mich.Comp. Laws § 257.50). However, it appears from the U.C.C. Official Comments that where they wrote "registered", the drafters meant the act of registration of a certificate of title. The *Draftsmen's Comment to 1972 Official Text* of U.C.C. § 9–103, Comment 4(a), states:

> Where the collateral is an automobile or other goods covered by a certificate of title issued by any state and the security interest is perfected by notation on the certificate of title, perfection is controlled by the certificate of title rather than by the law of the state wherein the security interest attached (subsection (2)).

The comments then go on in 4(b) and 4(c) to lament the problems created by the existence of both certificate and non-certificate of title states, noting that the purposes of the Uniform Commercial Code would be best served by uniformity through the adoption by all states of certificate of title laws. Emphasis throughout is on certificates of title. In context, then, the words "reregistered" and "reregistration" in Comment 4(c) and, by implication in § 9–103(2)(b), must refer to the issuance of new certificates of title in a second state.

Michigan's Uniform Commercial Code and the Michigan Motor Vehicle Code can be read in harmony with the drafters' intent and Sixth Circuit policy. The legal conclusion is not difficult to reach. The plaintiff's brief refers to five statutes in the Michigan Motor Vehicle Code which discuss registrations and/or certificates of title. He specifically relies on Mich.Comp.

---

**2.** With the consent of the parties, the Court requested of the Michigan Secretary of State an explanation of how it deals with sheriff's executions and the registration of vehicles titled in other states. Mr. Webster Buell, Director, Compliance and Rules Division, responded for the Secretary by letter on May 24, 1989. His letter confirms that a purchaser presenting a sheriff's bill of sale at any branch office of the Secretary of State would be issued a certificate of title free of any security interest.

**3.** *Paige* and *Angier* applied the 1962 version of the Uniform Commercial Code. Michigan has adopted the 1972 amendment of § 9–103(2)(b). The holdings may, however, be "logically extended to the 1972 amendments where the language of U.C.C. § 9–103(2)(b) is substantively identical to [the then applicable 1962 version]." *In re Ramey*, 93 B.R. 136, 142 (Bankr.E.D.Tenn. 1988).

Laws § 257.50, which explains that where the Motor Vehicle Code speaks of a "registration" the legislature is referring to a registration certificate or other indicators such as plates and tabs displayed on vehicles. We do not believe that this statute defines what it means *to register a vehicle* as such an act is explained more fully in another of the statutes the plaintiff cites, Mich.Comp.Laws § 257.222(1).

> The secretary of state when registering a vehicle and upon receipt of the required fee shall issue a registration certificate *and a certificate of title* except as otherwise provided in this act. (Emphasis added).

Mich.Comp.Laws § 257.222(1). For a vehicle to be registered in this state for purposes of Mich.Comp.Laws § 440.9103(2)(b), the Michigan Secretary of State issues both a registration and a certificate of title. We have found no applicable exception.

"[U]pon registering a vehicle, the secretary of state shall issue to the owner 1 registration plate." Mich.Comp.Laws § 257.224. However, the secretary of state will also issue a registration plate for a vehicle titled in another state if a person applies for a "memo" registration when, for example, the owner's out-of-state title is held by a lienholder.[4] This procedure enables new Michigan residents to more easily procure registration plates. We hold that applying for a "memo" registration is not the same as registering a vehicle. The Murrays applied for and received a "memo" registration and were issued a registration plate. Since the Murrays never secured a Michigan certificate of title, the vehicle was never registered in this state. Simply securing a "memo" registration is not the registration contemplated by Mich.Comp.Laws § 440.9103(2)(b). Norbel's security interest in the GMC truck is still perfected, since neither Michigan nor any other state issued any subsequent certificate of title. *See In re Daniels,* 93 B.R. 601, 7 U.C.C.Rept.Serv.2d 887 (Bankr.M.D. Tenn.1988); *In re B & S Motor Freight, Inc.,* 59 B.R. 259, 265 (Bankr.N.D.Okla.

1986); *Brewton Trading Corp. v. Midland Bank & Trust,* 115 Misc.2d 475, 454 N.Y. S.2d 510, 34 U.C.C.Rept.Serv. 980 (N.Y. Sup.Ct., 1982); *Strick Corp. v. Eldo–Craft Boat Co.,* 479 F.Supp. 720 (W.D.Ark.1979); *contra In re Hrbek,* 18 B.R. 631 (Bankr.D. Neb.1982); *In re Hartberg,* 25 U.C.C.Rept. Serv. 1429 (Bankr.E.D.Wis.1979).

Professors James J. White and Robert S. Summers presented *precisely* the fact scenario of this case in a hypothetical in the third edition of their hornbook on the Uniform Commercial Code and resolved it the same way.

> What of the case—well known among truckers, but also occasionally applicable to automobiles—in which the debtor procures license plates or some other form of "registration" in the second state (or in 25 states), but procures no new certificate of title? Many states now require that trucks using their roads be "registered". In such circumstances, however, there will be only one certificate of title outstanding and that necessarily will be from only one of the many of the states in which the truck is registered. In similar fashion, sometimes a student might take his car from Minnesota to Michigan and there "register" the car by procuring Michigan license plates. A student could do that without giving up his Minnesota certificate of title and without procuring a Michigan certificate of title. If the student or the truckers should then go bankrupt, one can anticipate the trustee in bankruptcy will argue that the secured creditor who did no more than get his name listed on the certificate of title in the original state has become unperfected because his four months have passed and the goods are now "registered" in another jurisdiction. Of course, that is a crazy outcome. How else could the creditor who has a security interest in the truck with one certificate of title and 25 registrations perfect its interest? Should the creditor file a financing statement in each of the states

---

**4.** This is the procedure outlined in Mr. Buell's letter in response to our inquiry about the regis-

tration of vehicles titled in other states.

where there is registration? We think not. We agree with the outcome of Judge Bare in *In re Nunley*, 21 B.R. 826 ([Bkrtcy.]E.D.Tenn.1982) and with the dictum in *Strick Corp. v. Eldo–Craft Boat Co., Inc.*, 479 F.Supp. 720 (W.D. Ark.1979). There the Arkansas court found that "registration" as used in 9–103(2)(b) has occurred only when a new certificate of title has been issued. This decision makes sense even though it does some violence to the complex and messy sentence set out in (2)(b). In a day when virtually every vehicle has a certificate of title and only one certificate of title, it is inconceivable that any lender will be misled by the debtor's mere registration of his truck in a new state. Even the corner mechanic knows enough to ask to see the certificate of title to determine whether or not there are security interests.

Where then did the language "registered in another jurisdiction" come from and what is it to do? We have heard a vicious rumor attributed to Homer Kripke, one of the drafters, that the drafters being mostly from the east coast, and knowledgeable only about subways, airplanes, and limousines, did not realize that one could register an automobile without getting a certificate of title. It is conceivable, too, that the language could and should have applied in a day when there were many non-title jurisdictions, and when one living in such a jurisdiction would not have thought to have asked to see the certificate of title once he saw the local license plates. That is no longer the case.

2 J. White and R. Summers, *Uniform Commercial Code*, p. 401–02 (3d ed. 1988).

■ What effect does Norbel's perfected security interest have on the trustee's § 544(a) avoidance powers? Upon the commencement of the case, the trustee was vested with the rights of a hypothetical lien creditor. 11 U.S.C. § 544(a)(1). As such,

his interest is, of course, superior to an unperfected security interest. Mich.Comp. Laws § 440.9301(1)(b). His interest is not superior to a perfected security interest. Furthermore, if a sheriff seized and sold the truck, he could seize and sell no more of an interest than the debtor enjoyed. *Powell v. Whirlpool Employees Fed. Credit Union*, 42 Mich.App. 228, 201 N.W.2d 683 (1972). The trustee asserts that a hypothetical purchaser of the Murrays' truck at a sheriff's execution sale in Michigan would receive the truck free of Norbel's interest.[5] This, he argues, means that Norbel's interest must be less than perfected. *Powell* is on all fours with this example, and is contrary to the trustee's position.

Powell purchased at a Florida execution sale a vehicle which had a Michigan certificate of title bearing a notation that Whirlpool Federal Employees Credit Union had a security interest. When the credit union seized the vehicle from him, Powell brought suit claiming that, as a bona fide purchaser at a sheriff's execution sale, he took the vehicle free of the credit union's lien. The court held that Powell did *not* own the vehicle free and clear of the prior perfected security interest. In essence, the sheriff's bill of sale was a quit claim of the judgment debtor's interest. *Powell* affirmed the opinion of the trial court, which said:

> An execution sale passes only whatever title the judgment debtor had in property. This is fundamental law, and the fact that property is being sold under execution, in and of itself, certainly does not decrease the duty of a person who is purchasing to make reasonable inquiry and investigation as to the actual ownership of property being so sold.... A simple check by phone, letter, or telegraph with our Secretary of State's Office would have disclosed the true state of the title and the Credit Union's interest.

5. We note again that Mr. Buell reports that the Secretary of State will issue a clear certificate of title to a purchaser at a sheriff's sale upon presentation at any of its branch offices of a sheriff's bill of sale, it being assumed apparently that the sheriff has notified the secured party and/or caused any lien to be discharged. Such may not be the case; however, a contest between such a purchaser and a secured party, is for another day and another court.

*Powell,* 42 Mich.App. at 231–32, 201 N.W.2d 683. Since on the date the Murrays filed their bankruptcy petition their truck was subject to Norbel's perfected security interest, a purchaser at a hypothetical sheriff's sale would have acquired the truck subject to such interest. The plaintiff's argument which flows from the opposite premise, is therefore, without merit.

Our determination that Norbel enjoys a perfected security interest resolves all the issues in this case. A judgment will enter in favor of the defendant.