**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,**

v.

**Stephen W. RUPP, Trustee for the Estate of Eric D. & Bridgette Turbiville, Respondent.**

No. 90–C–791A.

United States District Court, D. Utah, C.D.

Dec. 21, 1990.

Jay V. Barney, Day & Barney, Murray, Utah, for appellant General Motors Acceptance Corp.

Stephen W. Rupp, McKay, Burton & Thurman, Salt Lake City, Utah, for respondent Stephen W. Rupp as Trustee for the Estate of Eric D. and Bridgette Turbiville.

## MEMORANDUM OPINION

ALDON J. ANDERSON, Senior District Judge.

### I. Introduction

It is to be regretted that the peace and quiet of this old residential neighborhood should be disturbed by automobiles, but, no matter how great a nuisance automobiles and apartment houses may be, they have come to provide a means to solve the great question of housing and traffic, and in congested communities it is a great problem to find places for the erection of buildings for the storage of these useful, but annoying vehicles.

*Barker v. Boettger*, 124 Misc. 461, 208 N.Y.S. 295 (N.Y.Sup.Ct.1924).

Appellant General Motors Acceptance Corporation ("GMAC") brought this appeal from an order of the Honorable Glen E. Clark, Chief Judge, United States Bankruptcy Court for the District of Utah, granting to Stephen W. Rupp, Trustee for the Estate of Eric D. and Bridgette Turbiville ("the Trustee") the right to sell a 1987 Honda automobile free of a lien of GMAC perfected in the State of Missouri. GMAC argues that the bankruptcy court improperly construed Utah Code Ann. § 70A–9–103(2)(b) (1953) which deals with the continued perfection of security interests in collateral covered by a certificate of title which is removed from the jurisdiction in which the security interest was originally perfected.

### II. Facts

On or about September 21, 1987, the debtors, Eric D. Turbiville and Bridgette Turbiville purchased a 1987 Honda Accord from a dealer in Kansas City, Kansas. The conditional sales contract was assigned to GMAC which provided financing for the vehicle. At that time, the debtors were residing in Missouri and on February 2, 1988, the State of Missouri issued an original title indicating a lien in favor of GMAC. GMAC holds the original title to the vehicle at its Kansas City branch.

The debtors subsequently moved from Missouri to Utah and made application to the State of Utah for registration of the vehicle. The debtors indicated on their application for registration that a lien existed in favor of GMAC in Missouri. The application was stamped "REGISTRATION ONLY, NO TITLE ISSUED SUBJECT TO _____ TITLE." On June 2, 1989, the

State of Utah issued a certificate of registration without issuance of a new certificate of title.

The Debtors filed a petition for relief in bankruptcy on February 21, 1990. The Trustee brought an action to sell the vehicle free and clear of liens, claiming that the security interest of GMAC was no longer perfected because GMAC had failed to reperfect its interest within four months after the vehicle had been removed to Utah and the debtors had registered the vehicle in Utah. The bankruptcy judge, the Honorable Glen E. Clark, granted the request over the objection of GMAC and an order was entered authorizing the Trustee to sell the vehicle at public auction free and clear of all liens, interests or encumbrances and specifically free and clear of any lien, interest or encumbrance of GMAC.

### III. Analysis

Under Utah law, a lien upon a motor vehicle is perfected by filing an application for title with the Utah Department of Motor Vehicles and having the lien noted on the title. With certain exceptions not relevant to this matter, the notation of a lien on the certificate of title is the exclusive means of perfecting a security interest in a motor vehicle. Utah Code Ann. § 41–1–87 (1953). Missouri is also a certificate of title state and the notation of a lien on the title is the exclusive method of perfection. Missouri Revised Statutes § 301.650(2) (1986).

In 1977, Utah adopted the 1972 version of § 9–103 of the Uniform Commercial Code ("UCC") as Utah Code Ann. § 70A–9–103. Section 70A–9–103 governs the perfection of security interests in multiple state transactions. Subsection (2) applies to goods covered by a certificate of title where indication of a security interest on the certificate is required as a condition of perfection. § 70A–9–103(2)(a). Subsection (b) provides as follows:

> Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the laws, including the conflict of law rules, of the jurisdiction issuing the certificate *until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate.* After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

Utah Code Ann. § 70A–9–103(2)(b) (1953) (emphasis added). Thus, a perfected security interest remains perfected under the laws of the jurisdiction issuing the certificate for a period of at least four months. This period may be further extended until (1) the vehicle is "registered" in another jurisdiction, or (2) until "surrender" of the certificate.

At issue in this case is the meaning of the word "registered" in § 70A–9–103(2)(b). The lower court applied a literal interpretation to the term, finding that a vehicle is "registered" within the meaning of the statute if the vehicle has been issued a registration card by the State of Utah. The court reasoned that a contrary interpretation would render the final clause in the sentence about surrender of the certificate meaningless. The court ruled that because GMAC had failed to reperfect its security interest within four months after the vehicle had been removed to Utah and the vehicle had been registered in Utah, GMAC's security interest was no longer perfected and the Trustee's interest under 11 U.S.C. § 544 (1982) was superior to that of GMAC.

GMAC argues that the term "registered" contemplates the issuance of a new certificate of title and not the mere licensing of the vehicle to operate on the roads of Utah. As support for this conclusion, GMAC cites Utah Code Ann. § 41–1–23 (1990). Effective April 23, 1990, the Utah legislature amended § 41–1–23. The former version read as follows:

> Where in the course of interstate operation of a vehicle registered in another state it is desirable to retain registration of said vehicle in such other state, such applicant need not surrender but shall submit for inspection said evidence of

such foreign registration, and the department upon a proper showing shall register said vehicle in this state but shall not issue a certificate of title for such vehicle.

Utah Code Ann. § 41–1–23 (1953). Amended § 41–1–23 currently reads as follows:

(1) Where in the course of interstate operation of a vehicle registered in another state it is desirable to retain registration of the vehicle in the other state, the applicant need not surrender but shall submit for inspection evidence of out-of-state registration. The department upon a proper showing shall register the vehicle in this state but shall not issue a certificate of title for the vehicle.

(2)(a) If a person is relocating from another jurisdiction and establishing residence in this state, whether temporary or permanent, and that person has a vehicle registered and titled in another jurisdiction and is not able to surrender title to the vehicle being registered in Utah because title is physically held by a lienholder, the department may register the vehicle subject to the outstanding title in the other jurisdiction without issuing a Utah title.

(b) Upon satisfaction of the lien outstanding against the vehicle in the other jurisdiction, the registered owner shall, within ten days of receipt, surrender the title from the other jurisdiction to the department and make application for a Utah title.

(c) *Notwithstanding the provisions of Section 70A–9–103, the registration of a vehicle under this section does not alter or affect the rights or security interest of any lienholder in another jurisdiction.*

Utah Code Ann. § 41–1–23 (1990) (emphasis added).

 While the parties agree that the former and not the amended version of § 41–1–23 applies in this case, GMAC argues that amended § 41–1–23 clarifies the legislative intent of old § 41–1–23. Where the legislature makes a significant change in the words of a statute, it is presumed that the legislature intended to effectuate a change in the interpretation of the statute. *RDG Associates/Jorman Corp. v. Industrial Commission of Utah,* 741 P.2d 948, 951 (Utah 1987). However, where the legislature amends a portion of a statute but leaves other portions unamended, the legislature is presumed to have adopted them as consistent with its own intent. *Christensen v. Industrial Commission of Utah,* 642 P.2d 755, 756 (Utah 1982). Thus, an amendment which construes and clarifies a prior ambiguous statute may be regarded as a legislative interpretation or clarification of the original act. *See State v. Sweet,* 143 Ariz. 266, 693 P.2d 921, 924 (1985); *City of Anchorage v. Thomas,* 624 P.2d 271, 273 (Alaska 1981). This is especially so where more specific statutory sections are added to a general section. *People v. Hale,* 654 P.2d 849, 851 (Colo.1982).

A comparison of the former and amended versions of § 41–1–23 reveals that the legislature added more specific provisions while essentially retaining the original general section. In interpreting a statute, the court must "construe a statutory provision so as to make it harmonious with other statutes relevant to the subject matter." *Stahl v. Utah Transit Authority,* 618 P.2d 480, 481 (Utah 1980). Thus, § 70A–9–103 must be construed in light of § 41–1–23 to resolve this dispute. To properly understand the legislative intent of both sections, it is important to understand the basic purpose of secured transactions.

Article 9 of the UCC is designed to facilitate commerce by placing the public on "notice as to all existing interests in the collateral and to permit an orderly procedure whereby subsequent creditors can move their priorities to a more favored position when another secured party who perfected first releases its interest in the collateral." *Meyer v. General American Corp.,* 569 P.2d 1094, 1099 (Utah 1977). Such an orderly system of secured transactions is of benefit to both lenders and borrowers. Lenders benefit from this system because it provides a simple, reliable method of securing loans made to borrowers. Borrowers benefit because lenders are willing to supply a fund of money, available at

attractive interest rates, to assist in credit purchases. If lenders believe that a loan is adequately secured by collateral, the rate of interest on those loans will be lower and borrowers will further benefit. One of the greatest benefits of the Article 9 system is the availability of a central filing system for the notation of liens. A potential purchaser or lender is generally able to look to one central location to determine if a particular asset is encumbered.

We live in a highly mobile society where individuals frequently move from state to state. Thus, the protection of a security interest in collateral which moves from state to state is of major concern to lenders. Unless a lender can protect its security interest in such collateral, the lender may be unwilling to make the loan or may choose to demand a high interest rate to offset the risk of loss of the collateral.

The provisions of Article 9 represent a compromise between the interests of all parties who might claim an interest in a particular asset. While a secured party in one jurisdiction might believe that her interest once perfected should remain superior to any other subsequent interests, a party in another jurisdiction where the asset is located should be able to readily ascertain whether the asset is encumbered without a time consuming search of the records in all other jurisdictions. The problem is complicated because the laws and filing systems of each jurisdiction vary.

While all jurisdictions require the issuance of a certificate of title for certain motor vehicles, not all jurisdictions require the notation of a security interest on the certificate as a condition of perfection. *See* J. White & R. Summers, *Uniform Commercial Code* § 24–22 at 398 (3d. Ed.1988). Some jurisdictions require the filing of a financing statement in a central location in order to perfect a security interest. Of those jurisdictions that require the notation of a security interest on the certificate of title, each jurisdiction has a slightly different system for the issuance of a certificate of title. While some jurisdictions require the surrender of the certificate of title as a condition of registration, others may issue registration slips and license plates for vehicles subject to a certificate of title issued by another jurisdiction.

In simplistic terms, the Four Month Rule of § 70A–9–103 allows a perfected lienholder in one state a grace period of four months after the collateral is moved to another state during which to reperfect the security interest in the new state. The Rule is stated in slightly different forms depending on the type of collateral concerned. *See* § 70A–9–103(1)(d)(i) (documents, instruments and ordinary goods), § 70A–9–103(2)(b) (goods covered by certificate of title), § 70A–9–103(3)(e) (accounts, general intangibles and mobile goods). If the security interest is reperfected in the new state during that four month period, the original security interest continues perfected in the second state. § 70A–9–303(2).

The Four Month Rule places a significant burden on lienholders to monitor the current location of the collateral but provides a limited grace period during which to discover that the collateral has been removed from the original jurisdiction. Unless the lienholder promptly discovers that the collateral has been removed and reperfects in the new jurisdiction within the grace period, the once perfected security interest becomes unperfected and subsequent lienholders may attain a higher priority.

The Rule allows a lender or purchaser in a title state to simply examine the certificate of title to a vehicle. If the certificate was issued more than four months ago, and the certificate does not indicate a lien, the lender or purchaser is entitled to rely on the title. If, however, the title was issued less than four months ago, the lender or purchaser is placed on notice that there may be a valid security interest in another jurisdiction which may still be effective. The lender or purchaser would then be required to search the records in the jurisdiction from which the collateral came.

Section 70A–9–103 recognizes that the general public is unlikely to be familiar with the Four Month Rule and provides an exception for the innocent purchaser. Section 70A–9–103(2)(d) protects a non-profes-

sional buyer who relies on a clean certificate of title to the extent that she gives value and receives delivery of the goods during the four month period. In such a case, the holder of a perfected security interest in another jurisdiction may be harmed, but Article 9 recognizes that the non-professional buyer may be the more innocent of the two and shifts the loss away from her.

There is a clear split of authority on the proper interpretation of the Four Month Rule as it is applied to motor vehicles which are removed from a certificate of title state to another state. One line of cases holds that the word "registration" in § 9-103 contemplates the mere licensing of the vehicle in the second state. *See, e.g., In re Tuders*, 77 B.R. 904 (Bankr.N.D.Ala. 1987); *In re Hrbek*, 18 B.R. 631 (Bankr.D. Neb.1982); *In re Hartberg*, 25 U.C.C.Rep. Serv. 1429 (Bankr.E.D.Wis.1979). Another line of cases construes "registration" to contemplate the issuance of a title certificate and not merely the licensing of the vehicle to operate within the state. *See, e.g., In re Murray*, 109 B.R. 245 (Bankr.E. D.Mich.1989); *Ford Motor Credit Corp. v. Partee*, 514 So.2d 640 (La.Ct.App.1987); *Brewton Trading Corp. v. Midland Bank & Trust Co.*, 115 Misc.2d 475, 454 N.Y.S.2d 510 (N.Y.Sup.Ct.1982); *Strick Corp. v. Eldo-Craft Boat Co., Inc.*, 479 F.Supp. 720 (W.D.Ark.1979). The logic behind each line of cases may be illustrated by a representative case.

In *In re Tuders*, 77 B.R. 904 (Bankr.N.D. Ala.1987), the trustee in bankruptcy sought to avoid the interest of a creditor claiming a perfected security interest in a mobile home owned by the debtors. The creditor had properly perfected its security interest in the mobile home by the notation of the lien on the certificate of title in the State of North Carolina and had retained the certificate in its possession. The debtors subsequently moved the mobile home to Alabama and there paid a registration fee and received a registration tag and tax receipt but no new certificate of title was issued. The court agreed with the trustee that the word "registered" in § 9-103(2)(b) does not contemplate the issuance of a certificate of

title but simply the payment of a fee and the receipt of a registration tag.

The *Tuders* court presumed that the drafters of Article 9 must have carefully considered their choice of words for the statute and that four months is normally an adequate time during which to discover that the collateral has been removed and to reperfect a security interest in the new jurisdiction. Relying on that presumption, the court ruled that the creditor's security interest became unperfected under § 9-103(2)(b) because the creditor failed to reperfect its interest in Alabama where the debtors had registered the mobile home and more than four months had passed since the mobile home had been removed to Alabama.

In contrast, the court in *In re Murray*, 109 B.R. 245 (Bankr.E.D.Mich.1989) reached the opposite conclusion. In *Murray*, the trustee in bankruptcy sought to avoid the interest of a creditor claiming a perfected security interest in the debtors' truck. The creditor's security interest in the truck was properly perfected by notation of the lien on the certificate of title issued by the State of Colorado where the debtors resided. The debtors subsequently moved to Michigan and there obtained a Michigan "memo" registration and Michigan registration plate for the truck. A Michigan memo registration does not include the issuance of a certificate of title and is authorized when, for example, the owner's out of state title is held by a lienholder. More than four months later, the debtors filed their petition for bankruptcy and the trustee sought to avoid the security interest under § 9-103(2)(b) because the truck had been registered in Michigan and more than four months had passed since the truck had been removed to Michigan.

The *Murray* court ruled that the Michigan memo registration was not the sort of registration contemplated by § 9-103(2)(b). The court reasoned that the Four Month Rule is not designed to destroy security interests, but "to assure that the marketplace not be chilled by worries over perfected, but secret, liens on vehicles." *Id.* at

247. The court held that a vehicle is registered for purposes of § 9–103(2)(b) only when the registration includes the issuance of a new certificate of title. Thus, the creditor's security interest which was noted on the Colorado certificate of title remained perfected at the time of the filing of the petition for relief and the creditor's interest was superior to that of the trustee.

In the present case, the Trustee argues that if the certificate of title must be surrendered in order for a vehicle to be "registered" within the meaning of § 70A–9–103(2)(b), the final clause of that complex sentence is without meaning. The final clause of that sentence states, "but in any event not beyond surrender of the certificate.".

The drafters of Article 9 recognized that the certificate of title will ordinarily be held by the secured party. *See* Utah Code Ann. § 41–1–39 (1953); Uniform Motor Vehicle Certificate of Title and Anti–Theft Act § 10 (certificate of title to be mailed to the first lienholder named in it or, if none, to the owner). In the official comment to § 9–103, the drafters note:

> The security interest perfected by notation on a certificate of title will be recognized without limit as to time; but, of course, perfection by this method ceases if the certificate of title is surrendered (paragraph (2)(b)). Since the secured party ordinarily holds the certificate, surrender thereof could not occur without his action in the matter in some respect. If the vehicle is reregistered in another jurisdiction while the secured party still holds the certificate, a danger of deception to third parties arises. The section provides that the certificate ceases to control after 4 months following removal if reregistration has occurred, but during the 4 months following removal if reregistration has occurred, but during the 4 months the secured party has the same protection for cases of interstate removal as is set forth in paragraph (1)(d) of the section and Comment 7, subject to additional limitation if the reregistration also involves a new "clean" certificate of title in the removal jurisdiction and a non-professional buyer buys while that new cer-

tificate is outstanding. See paragraph (2)(d) and Comment 4(e).

Uniform Commercial Code § 9–103 comment 4(c).

The comment notes that "a danger of deception" to third parties arises if the vehicle is reregistered in another jurisdiction while the secured party still holds the certificate. This danger of deception is that a lender or purchaser will rely on a clean certificate of title in the new state while a certificate of another state controls. It was to avoid this danger of deception that the Four Month Rule was developed. It is inconceivable that any lender will be misled by the mere licensing of a vehicle in a new state. Article 9 does not allow a purchaser to rely on a registration slip but rather on the certificate of title to identify the true owner of a vehicle and the holders of perfected security interests.

The drafters recognized that the particular process by which an individual state would issue a certificate of title could significantly affect the Article 9 scheme. They noted that the "state will have every reason, nevertheless, to make its certificate of title reliable to the type of person who most needs to rely on it." Uniform Commercial Code § 9–103 comment 4(e). It is significant to note that the comment emphasizes the reliability of the *certificate of title* and not the registration slip. Thus, it may be inferred that the drafters anticipated that the *certificate* and not the mere fact of registration would be relied on by those searching for security interests.

The "surrender" of the certificate described in the final clause of the first sentence of § 70A–9–103(2)(b) is most likely the execution by a lienholder of a release of a security interest in a space provided on the certificate of title. The execution of the release constitutes a surrender of the security interest in the vehicle. The owner of the vehicle would be entitled to submit the original title showing the release to the department of motor vehicles and then receive a new "clean" title.

This surrender principle may best be demonstrated by example. Presume that a

secured party has perfected its interest in a vehicle by notation of the interest on the certificate and has retained the certificate. If the vehicle is removed to another state, the secured party has a minimum of four months to reperfect its interest in the new state. The four month period will be extended until the vehicle was reregistered (including issuance of a new certificate). However, if the secured party intentionally or inadvertently surrenders the certificate after having executed a release of lien noted thereupon, the interest is no longer perfected. Thus, the clause relating to the "surrender" of the title does have independent significance if "registration" requires the issuance of a new certificate of title.

Professors White and Summers offer the following examples of the "crazy outcome" that occurs when "registration" is interpreted to mean the mere licensing of a motor vehicle:

> What of the case—well known among truckers, but also occasionally applicable to automobiles—in which the debtor procures license plates or some other form of "registration" in the second state (or in 25 states), but procures no new certificate of title? Many states now require that trucks using their roads be "registered". In such circumstances, however, there will be only one certificate of title outstanding and that necessarily will be from only one of the many of the states in which the truck is registered. In similar fashion, sometimes a student might take his car from Minnesota to Michigan and there "register" the car by procuring Michigan license plates. A student could do that without giving up his Minnesota certificate of title and without procuring a Michigan certificate of title. If the student or the trucker should then go bankrupt, one can anticipate the trustee in bankruptcy will argue that the secured creditor who did no more than get his name listed on the certificate of title in the original state has become unperfected because his four months have passed and the goods are now "registered" in another jurisdiction. Of course, that is a crazy outcome. How else could the creditor who has a security

interest in the truck with one certificate of title and 25 registrations perfect its interest? Should the creditor file a financing statement in each of the states where there is registration? We think not.

J. White & R. Summers, *Uniform Commercial Code* § 24–22 at 401 (3d. Ed.1988). Professors White and Summers conclude that "registration" as used in 9–103(2)(b) occurs only when a new certificate of title has been issued.

If the court were to accept the Trustee's interpretation of § 70A–9–103(2)(b), the words of the statute might make sense, but the Article 9 system designed to protect innocent parties is destroyed. The Trustee's proposed interpretation would lead to the following analysis. While the debtors were residing in Missouri, the vehicle was covered by a Missouri title. Because Missouri is a title state, any security interest in the vehicle had to be noted on the Missouri title to be valid. When the debtors removed the vehicle to Utah, the four month reperfection clock began ticking. After the four month period had passed and the vehicle had been registered in Utah, GMAC's security interest was no longer perfected. However, because no Utah title had been issued, no security interest could be perfected in Utah. No lender or purchaser could rely on the Missouri title because the vehicle had been removed to and registered in Utah and no lender or purchaser could rely on a Utah title because none had been issued.

Of course, such an interpretation would make no sense and would negate many of the benefits provided by a central registry of liens on motor vehicles. To adequately protect its interest, a secured party would be required to constantly monitor the location of the vehicle to ensure that it had not been "removed" to another jurisdiction within the meaning of § 70A–9–103.

However, if a certificate of title must be issued for a vehicle to be "registered" within the meaning of § 70A–9–103(2)(b), the purposes of Article 9 are preserved. Under normal circumstances, when a vehicle is moved from one title jurisdiction to an-

other title jurisdiction, it is the certificate of title which controls. The secured party in the first jurisdiction is protected because his interest is perfected until a new certificate is issued in the second jurisdiction. The second jurisdiction may issue license plates for the car, but will not issue a certificate until the old certificate is produced. *See* Uniform Motor Vehicle Certificate of Title and Anti–Theft Act § 6(c)(1). There is no danger of deception to any potential purchasers or lenders because they know that a security interest cannot be perfected without notation on the certificate which the owner of the vehicle cannot produce.

### IV. Conclusion

 In enacting § 70A–9–103, the Utah legislature intended to create a workable system for the notation of liens which would allow reliance on the local filing system while providing some measure of protection to those in other jurisdictions who might claim some interest in the asset. As evidenced by § 41–1–23, the Utah legislature intended that § 70A–9–103(2)(b) would not unnecessarily destroy perfected security interests in motor vehicles.

GMAC perfected its security interest in the vehicle by having the interest properly noted on the certificate of title issued by the State of Missouri. This interest remained perfected after the vehicle had been removed to Utah because the vehicle had not been registered within the meaning of § 70A–9–103(2)(b) and GMAC had not surrendered the original certificate of title. Therefore, the bankruptcy court erred by issuing its order allowing the vehicle to be sold by the Trustee free and clear of the lien of GMAC. Therefore, the decision of the bankruptcy court is REVERSED and the case is REMANDED to the bankruptcy court for action consistent with this ruling.

IT IS SO ORDERED.