Costello, Cooney & Fearon, Syracuse, N. Y., for defendant-appellant; Bruce B. Roswig, Syracuse, N. Y., of counsel.

Leon J. De Bernardis, Utica, N. Y., for plaintiff-appellee.

In Re David M. HOWARD, Bankrupt.

Leon J. De BERNARDIS, Trustee, Plaintiff-Appellee,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant-Appellant.

Bankruptcy No. 79-1758.

United States District Court, N. D. New York.

March 17, 1981.

## MEMORANDUM—DECISION AND ORDER

McCURN, District Judge.

The defendant General Motors Acceptance Corporation (hereafter GMAC) appeals from the decision of the Hon. Leon J. Marketos, U. S. Bankruptcy Judge for the Northern District of New York, granting judgment in favor of plaintiff-appellee Loen J. De Bernardis, the trustee in bankruptcy. In finding for the trustee, the Bankruptcy Judge ruled that the defendant-appellant's lien on the bankrupt's 1979 Chevrolet truck was null and void, thus giving the trustee a superior interest in the proceeds from the sale of the vehicle.

The issues raised on appeal are listed by defendant-appellant as: (1) whether the Uniform Vehicle Certificate of Title Act, New York State V & T Law §§ 2101 et seq. (hereinafter "Title Act") supercedes the Uniform Commercial Code (hereinafter "UCC") when the two are in conflict; (2) whether the Title Act was repealed in whole or part by amendments to the UCC which became effective on or about July 2, 1978; and (3) whether the defendant-appellant GMAC is entitled to judgment dismissing the plaintiff-appellee's complaint and judgment on its counterclaim for the entire proceeds on deposit from the sale of the bankrupt's 1979 Chevrolet truck, plus the accrued interest.

## BACKGROUND

The decision below was based on the following agreed upon statement of facts. In November of 1978, the bankrupt, David M. Howard, purchased a 1979 Chevrolet truck from a Massachusetts dealer. A security interest in the vehicle given the dealer at the time of purchase was immediately assigned to the defendant-appellant GMAC. GMAC perfected its security interest by recording it with the Massachusetts Registry of Motor Vehicles. The lien was noted on the Massachusetts certificate of title.

In January of 1979, the bankrupt moved from Massachusetts to New York State. He brought the truck with him and registered it in New York in July of 1979. He did not, however, ever apply for a New York certificate of title nor did he at any time surrender the Massachusetts certificate which was in the possession of GMAC as lienholder. On August 13, 1979, having already defaulted in payments due GMAC, Howard filed a petition in bankruptcy.[1]

Pursuant to an agreement of the parties to this action, the vehicle was sold by the trustee and the net proceeds of $4,850.25 placed in escrow in an interest bearing account pending the determination of the issues raised in this action.

The trustee in commencing this action claimed that the security interest held by defendant GMAC was subordinate to his interest as trustee by reason of the removal of the vehicle from Massachusetts and its subsequent registration in New York State. In so arguing, the trustee relied on the multiple state transaction provision of UCC § 9–103(2)(b). GMAC, on the other hand, argued that the action was not governed by the UCC but by the Title Act, under which according to GMAC its security interest continued to be valid and had priority over the interest of the trustee.

In granting judgment for the plaintiff below, the Bankruptcy Judge found that the New York State Legislature in amending UCC §§ 9–103 and 9–302 in 1977 intended to repeal V & T Law §§ 2118 and 2123 to the extent that those sections are inconsistent with the amended UCC provisions with respect to the perfection of security interests in motor vehicle involved in multiple state transactions. Thus, according to Judge Marketos, perfection of security interests in multiple state transactions like the one in the present case, is governed by UCC § 9–103, under which GMAC had lost perfection of its security interest.

While this Court agrees that the Bankruptcy Judge was correct in awarding judgment to the plaintiff-appellee, it reaches that result without the necessity of finding an implied repeal.

## DISCUSSION

It is a cardinal principle of statutory construction both in federal and New York State Courts that repeals by implication are not favored. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976); *People v. Mann*, 31 N.Y.2d 253, 257–58, 336 N.Y.S.2d 633, 636–67, 288 N.E.2d 595 (1972). In *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974), the Supreme Court discussing federal legislation cautioned that "[t]he courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." The same rule applies with respect to laws enacted by the New York State Legislature. New York Statutes Law § 391; *Cimo v. State*, 306 N.Y. 143, 116 N.E.2d 290 (1953).

This Court believes, at least with respect to the present situation, that not only are the UCC and the Title Act capable of co-existence but that reference to both is required in order to resolve the issue of perfection raised in this lawsuit.

---

1. The agreed upon statement of facts does not mention whether or not GMAC was advised that the vehicle was being removed from Massachusetts, and although the trustee claims that GMAC was, the Bankruptcy Judge made no findings on the question nor may this Court attempt to do so.

The parties do not dispute that the Chevrolet truck at issue in this litigation is a vehicle generally covered by the Title Act. The exclusivity language of V & T Law § 2123 suggests that the Court's analysis in this case should begin with the provisions of the Title Act. That section provides that:

> The method provided in this article of perfecting and giving notice of security interests subject to this article is exclusive. Security interests subject to this article are hereby exempted from the provisions of law which otherwise relate to the perfection of security interests.

Further support for beginning with the Title Act is found in the UCC itself. UCC § 9–302, as amended L.1977, c. 866, § 16 entitled "When Filing is Required to Perfect Security Interest; Security Interests to Which Filing Provisions of the Article Do Not Apply" provides in relevant part that:

> (3) The filing of a financing statement otherwise required by this Article is not necessary or effective to perfect a security interest in property subject to
>
> *    *    *    *    *    *
>
> (b) the following statutes of this state: article forty-six of the vehicle and traffic law [the Title Act];
>
> (4) Compliance with a statute or treaty described in subsection (3) is equivalent to the filing of a financing statement under this Article, and a security interest in property subject to the statute or treaty can be perfected only by compliance therewith except as provided in Section 9–103 on multiple state transactions. Duration and renewal of perfection of a security interest perfected by compliance with the statute or treaty are governed by the provisions of the statute or treaty; in other respects the security interest is subject to this Article.

The Title Act at V & T Law § 2118(c) addresses the issue of perfection in vehicles subject to a security interest at the time they are brought into New York State in the following manner relevant to this case:

> (c) If a vehicle is subject to a security interest when brought into this state, the validity of the security interest is determined by the law of the jurisdiction where the security interest attached, subject to the following:
>
> (2) If the security interest was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply:
>
> > (A) If the name of the lienholder is shown on a *currently effective* certificate of title issued by that jurisdiction, his security interest continues perfected in this state. [emphasis added]

According to section 2118(c), GMAC's security interest in the truck, admittedly perfected under the laws of Massachusetts, would have still been perfected at the time that Howard declared bankruptcy if the Massachusetts certificate of title was "currently effective." A determination as to whether the certificate of title was still in effect at that time cannot be made through reference to the Title Act as the Act contains no provisions dealing with that issue. Therefore, the Court must look elsewhere, and in this instance the continued effectiveness of the Massachusetts certificate of title is governed by UCC § 9–103(2), as amended L.1977, c. 866, § 7 entitled "Perfection of Security Interests in Multiple State Transactions." This section provides in relevant part that:

> (2) Certificate of Title.
>
> (a) This subsection applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.
>
> (b) Except as otherwise provided in this subsection, perfection and the effect of perfection or non-perfection of the security interest are governed by the law (including the conflict of law rules) of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond the surrender of the certificate. After the expiration of that period, the goods

are not covered by the certificate of title within the meaning of this section.

The language in subsection (a) makes it clear that the provision is intended to apply to vehicles covered by the Title Act, at least insofar as not precluded from doing so by V & T Law § 2123. Application of UCC § 9–103(2)(b) for the purpose of determining the effectiveness of the Massachusetts certificate of title at the time Howard filed for bankruptcy does not violate the Title Act's exclusivity provision since the Title Act does not address the issue or offer any guidelines for the determination of current effectiveness of perfection of a security interest in this type of situation.

According to the plain language of subsection (b) once the bankrupt's truck was reregistered in New York State more than four months after its removal from Massachusetts it ceased to be covered by that state's certificate of title. Thus, the certificate was not effective at the time Howard filed for bankruptcy nor was GMAC's security interest perfected in accordance with the requirements of the Title Act at V & T Law § 2118(c)(2)(A).

This interpretation of subsection (b) has received support from the reports and official comments of the drafters of the 1972 UCC amendments, from the Courts and from the numerous commentators who have written on section 9–103.[2] *See e. g. In re Hartberg*, 25 UCC Rep.Serv. 1429 (E.D.Wis. 1979); *Final Report* of the Review Committee for Article 9 of the UCC at p. 239 [hereinafter cited as *Final Report*]; Rohner, *Autos, Title Certificates and UCC 9–103: The Draftsmen Try Again*, 27

Bus.Law 1177, 1187 (1972) [hereinafter cited as *Rohner*].

Section G–11 of the *Final Report, supra.* at p. 239 explains that:

> Proposed paragraph (2)(b) deals with collateral covered by a certificate of title. In general, a security interest perfected by notation on a certificate of title continues to be perfected so long as the certificate is outstanding *or until the collateral is registered in another ·jurisdiction*, notwithstanding removing the collateral into another state and keeping it there for more than four months.... [emphasis added].

The reasoning behind inclusion of reregistration as an uncovering event is explained in Comment 4(c) of the Official Comments to Section 9–103 which states that:

> Since the secured party ordinarily holds the certificate, surrender thereof could not occur without his action in the matter in some respect. *If the vehicle is reregistered in another jurisdiction while the secured party still holds the certificate a danger of deception to third persons arises.* [emphasis added].

Prior to the enactment of the 1972 amendments to UCC § 9–103, adopted by the New York State Legislature in 1977, the question of continued perfection would have been governed by then UCC § 9–103(4) which provided generally for indefinite perfection of a security interest in property "covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security

---

**2.** Although neither party to this lawsuit raised any question with regard to the intended meaning of "registration" as used in UCC § 9–103(2)(b), other Courts have addressed the issue of whether it really means registration or actually means issuance of a certificate of title. In *Strick Corp. v. Eldo-Craft Boat Co., Inc.*, 479 F.Supp. 720 (W.D.Ark.1979) the Court found that the term contemplated issuance of a certificate of title and not merely a non-title vehicle registration. *See contra In re Hartberg*, 25 UCC Rep.Serv. 1429 (E.D.Wis.1979).

A finding by this Court that the term actually meant issuance of a certificate of title would dictate reversal of the decision below. However, this Court is more inclined to attribute its customary meaning to the registration as used in UCC § 9–103(2)(b). First, it is impossible for this Court to believe that the drafters were not familiar with the typical distinction between registration of a vehicle and procurement of a certificate of title. Second, support is found in the 1971 Comments to UCC § 9–103 at 4(c) where specific reference is made to the intent to deal with the situation in which a vehicle is registered in another jurisdiction without issuance of a new certificate.

interest in the property as a condition of perfection." UCC § 9–103(4).[3]

That provision was the subject of much criticism. *See* D. Kent Myers, *Multi-State Motor Vehicle Transactions Under the Uniform Commercial Code: An Update*, 30 Okl. L.Rev. 834 (1977); *Rohner, supra*; Note, "Interstate Movement of Motor Vehicles Subject to Security Interests: A Case for Repealing UCC § 9–103(4)," 54 Corn.L.Rev. 610 (1969).

The Court in the bankruptcy case of *In re Hartberg, supra*, found fault with UCC § 9–103(4) primarily because it allowed perfection to continue indefinitely in the removal state thereby compelling courts to hold against trustees in bankruptcy and to favor creditors in the state of origin over bona fide purchasers or subsequent lien creditors in disputes long after the vehicle had been brought into the removal state with no effort having been made by the creditor to reperfect.

It seems clear that UCC § 9–103 was amended, at least in part, to avoid these results by placing time and event limitations on perfection in the removal state. In support of that position it is interesting to note that UCC § 9–103(2)(b) still does not place as stringent requirements on creditors

holding security interests in property covered by a certificate of title as UCC § 9–103(1)(d)(i) does with respect to other personal property. Whereas creditors must actively reperfect security interests on the removal state within four months or lose perfection under subsection (1)(d)(i), no positive act of reperfection is required under subsection (2)(b) *unless* one of the uncovering events keyed to third party protection has occurred.

This certainly suggests to the Court an intent on the part of the drafters to do away with the potential for injustice to third parties in amending UCC § 9–103. GMAC argues that the reregistration rule is unfair, however, because of the burden it places on the creditor to keep track of its debtors and its inability to force debtors to obtain a new certificate of title in the removal state. This complaint is not without merit, especially since the Title Act at V & T Law § 2110 specifically allows registration of vehicles without issuance of certificates of title in instances where the Commissioner of Motor Vehicles is not convinced that there are undisclosed security interests in the vehicles.[4]

However, the 1971 Comments to Section 9–103 at 4(e) recognize and address the problem facing creditors stating that:

3. Courts were often faced with the question of whether subsection (3) or (4) of UCC § 9–103 would apply in a given situation where a certificate of title was in some way involved. Subsection (3) stated in pertinent part that:

If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached.... If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, then the validity of the security interest continues to be perfected in this state for four months and also thereafter if within the four month period it is perfected in this state.

Creditors who had failed to reperfect argued for application of subsection (4) which allowed for continued perfection in this state, while third parties seeking priority argued for appli-

cation of subsection (3) which placed a definite limitation on perfection.

One particular case, *In re White*, 266 F.Supp. 863 (N.D.N.Y.1967), later cited with approval in the *Final Report* on the 1972 amendments at G–11 on p. 239, found that subsection (4) had to be applied in certificate of title situations because to fail to do so would render it ineffectual. It appears as though the majority of Courts addressing the issue found subsection (4) to be controlling in certificate of title situations.

4. Although both the UCC and the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act, 9B U.L.A. 369 (1966) (adopted by the New York Legislature effective 1972 and presently constituting the Title Act) are sponsored by the National Commission on Uniform State Laws, the UCC Review Committee recognized that the two contain incompatible provisions and suggested that the two be brought into conformity. *See Final Report, supra.* at pp. 238, 240; *See also Rohner, supra.* at p. 1193. Unfortunately this has not been done and this Court does not have the authority to do so.

One difficulty is that no state's certificate of title law makes any provision by which a foreign security interest may be reperfected in that state, without the cooperation of the owner or other person holding the certificate in temporarily surrendering the certificate. But that cooperation is not likely to be forthcoming from an owner who wrongfully procured the issuance of a new certificate not showing the out-of-state secured interest, or from a local secured party finding himself in a priority contest with the out-of-state secured party. The only solution for the out-of-state secured party under the present certificate of title laws seems to be to reperfect by possession—i.e., by repossessing the goods.

The fact that the drafters recognized the problem and still chose to enact the amendments, while suggesting a consumer oriented approach, demonstrates further the intent to limit the period of perfection in multiple state transactions even though it may sometimes create difficulty for the creditor. (*See Rohner, supra.* at p. 1193 suggesting that the revision of § 9–103 is meant to give additional protection to innocent consumers where there has been no reperfection in the removal state).

Thus, while the Court is not unsympathetic to the defendant-appellant's position, it is convinced that the result reached is consistent with the statutory language involved and with the clear intent of both the drafters of the 1972 amendments to the UCC and the Title Act and directs that the decision of the Bankruptcy Judge granting judgment to the plaintiff-appellee be affirmed for the reasons contained herein.

Judgment affirmed