**In re Timothy MALES and Karen Males, Debtors.**

**CHRYSLER CREDIT CORPORATION, Plaintiff–Appellant,**

v.

**Michael RELIGA, Trustee, Defendant–Appellee.**

**No. 1348, Docket 92–5089.**

United States Court of Appeals, Second Circuit.

Argued April 5, 1993.

Decided July 9, 1993.

Jonathan D. Deily, Albany, NY (Deily, Testa & Dautel, of counsel) for plaintiff-appellant.

Michael Religa, Syracuse, NY (Paul M. Gallagher, Costello, Cooney & Fearon, of counsel) for defendant-appellee.

Before: TIMBERS, McLAUGHLIN, and WELLFORD,* Chief Judges.

WELLFORD, Circuit Judge:

While residents of New Hampshire, Mr. and Mrs. Males purchased a car and a truck in 1988 from Chrysler Corporation ("Chrysler") and they received certificates of title for both these vehicles from New Hampshire. Each of the certificates reflected Chrysler's lien for the unpaid purchase price, which properly perfected that security interest in New Hampshire.

In the fall of 1989, Mr. and Mrs. Males moved from New Hampshire to New York, and they registered the two vehicles in New York, acquiring state license plates and registration papers. At no time, however, were new certificates of title issued in New York. The New Hampshire certificates of title were therefore the *only ones* ever issued for these vehicles.

* Honorable Harry W. Wellford, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

On March 11, 1991, Mr. and Mrs. Males filed a voluntary Chapter 7 bankruptcy petition in New York. The bankruptcy trustee, Michael Religa, filed this adversary proceeding to set aside and to void Chrysler's liens on both vehicles for the benefit of other creditors.[1] Both Religa and Chrysler cross moved for summary judgment in the bankruptcy court.

The bankruptcy judge found for the trustee, concluding, in effect, that registration meant only obtaining license plates, and not as Chrysler argued, obtaining both license plates and a new certificate of title. The bankruptcy court decided that the debtors' act of registering their cars in New York cut off Chrysler's perfected security interest noted on the New Hampshire title because over four months had passed since the Males had moved. Judge Gerling ruled that in New York "registration and titling are distinct acts."

The district court reviewed the bankruptcy court decision, acknowledging a split of authority as to the interpretation and meaning of "registered," and decided that registration was not synonymous with obtaining a certificate of title. Judge Scullin, therefore, "conclude[d] that Chrysler Credit Corporation's security interest in the debtors' vehicles, as noted on the certificates of title issued by New Hampshire, became void after four months had passed since the vehicles had been removed to and reregistered in New York."

■ This case turns on the interpretation of the Uniform Commercial Code (U.C.C.), as adopted in New York, its commentary, and the New York traffic laws. We review this case de novo, since it involves an interpretation of law to be applied in a bankruptcy dispute.[2] We must decide whether the New Hampshire certificate of title is "currently effective" under New York law or, in other words, if Chrysler still has a perfected security interest in both cars. Thus, this court is required to determine whether the term "registered," as used in the U.C.C. and applied in New York, includes issuance of a new certificate of title. Under U.C.C. § 9–103(2)(b), the law of New Hampshire, as the certificate of title issuing authority, may govern if the vehicles are not considered to have been "registered" in New York, and thus Chrysler's interest would be continuously effective. *In re Nunley*, 21 B.R. 826 (Bankr. E.D.Tenn.1982). In any event, in our de novo review we are not required to give deference to the district court's interpretation of the state law. *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *General Motors Acceptance Corp. v. Rupp*, 951 F.2d 283, 285 (10th Cir.1991).

The Certificate of Title Act in New York describes a "security interest" such as claimed by Chrysler as "an interest in a vehicle reserved ... by agreement ... which secures payment," and is "perfected when it is valid against third parties generally...." N.Y.Veh. & Traf.Law § 2101(k) (McKinney 1986).

Under New York law "perfection of security interests" is governed by New York Vehicle & Traffic Law § 2118, which reads:

(2) If the security interest was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply:

(A) If the name of the lienholder is shown on a currently effective certificate of title issued by that jurisdiction, his security interest continues perfected in this state.

(B) If the name of the lienholder is not shown on a *currently effectively* **certificate of title** issued by that jurisdiction, the security interest continues perfected in this state for four months after a first certificate of title of the vehicle is issued in this state, and also, thereafter if, within the four month period, it is perfected in this

---

1. Chrysler Credit Corporation, a division of Chrysler, as assignee, was the lienholder; on the certificate of title it is called "Chrysler Credit."

2. New York (and New Hampshire, as well) has also adopted the Uniform Vehicle Certificate of

Title Act. *See also* U.C.C. § 9–103(b), 3 U.L.A. 143 (1992), dealing with perfection of a security interest in a motor vehicle and the law of the "jurisdiction in which the debtor is located."

state. The security interest may also be perfected in this state after the expiration of the four month period; in that case perfection dates from the time of perfection in this state.

N.Y.Veh. & Traf.Law § 2118(c)(2)(A), (B) (McKinney 1986) (emphasis added). Since "currently effective" is not defined in the New York Code, we must turn to the U.C.C. to determine if Chrysler's lien is currently effective.

New York adopted, in its entirety, U.C.C. § 9–103(2)(b), which reads as follows:

Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of law rules) of the jurisdiction issuing the certificate **until four months after the goods are removed from that jurisdiction and thereafter until the goods are *registered* in another jurisdiction,** but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

N.Y.U.C.C.Law § 9–103(2)(b) (McKinney 1986) (emphasis added).

■ The New York Vehicle and Traffic Law, § 2104, requires every owner to apply for a certificate of title in New York:

(a) Every owner of a vehicle which is in this state ... for which no certificate of title has been issued by the commissioner shall make application to the commissioner for a certificate of title of the vehicle within thirty days after transfer to him of the vehicle.

(b) The Commissioner *shall not register* or renew registration of a vehicle unless a certificate of title has been issued by the Commissioner to the owner or an application therefor has been made by the owner and delivered to the commissioner.

N.Y.Veh. & Traf.Law § 2104(a)–(b) (McKinney 1986) (emphasis added). New York law also requires the surrender of the out of state certificate of title when application is made for a New York certificate of title when the car was previously registered in another state. N.Y.Veh. & Traf.Law § 2105(c) (McKinney 1986); *Exchange Nat'l Bank v. New York*, 88 Misc.2d 444, 388 N.Y.S.2d 971 (Ct.Cl.1976). In addition, the New York Certificate of Title Act sets out the procedure to be followed where there is an application for certificate of title:

(d) If the commissioner is not satisfied as to the ownership of the vehicle or that there are no undisclosed security interests in it, the commissioner may register the vehicle but shall either: (1) withhold issuance of a certificate of title until the applicant presents documents reasonably sufficient to satisfy the commissioner as to the applicant's ownership of the vehicle and that there are no undisclosed security interests in it; or (2) as a condition of issuing a certificate of title, require the applicant to file with the commissioner a bond prescribed by the commissioner and executed by the applicant, and by a person authorized to conduct a surety business in this state. The bond shall not be returned prior to the end of three years if the commissioner has been notified of the pendency of an action to recover on the bond or if the currently valid certificate of title was surrendered to another state as proof of ownership to obtain a certificate of title from that state.

N.Y.Veh. & Traf.Law § 2105(d) (McKinney 1986).

There is no information in the record as to whether the Males, as debtors, sought application for a new certificate of title disclosing to the New York commissioner Chrysler's first lien security or were required to post a bond under § 2105(d) for Chrysler's protection in registering the vehicles in New York.

In the Males' case, New York did not issue a new title certificate, but instead, apparently followed New York Vehicle & Traffic Law § 2110 (McKinney 1986):

If the commissioner is not satisfied as to the ownership of the vehicle or that there are no undisclosed security interest in it, the commissioner may register the vehicle but shall withhold issuance of a certificate of title until the applicant presents documents reasonably sufficient to satisfy the commissioner as to the applicant's owner-

ship of the vehicle and that there are no undisclosed security interests in it.

*Id.* (footnote omitted). We do not know in this case the basis for New York's refusal to issue a certificate of title, or whether one was even sought.[3]

The vehicles were not "registered" in New York until a few months before the Males' bankruptcy. The bankruptcy court found that the debtors obtained "New York registrations and license plates for both vehicles," but "no new title certificates," without further elaboration about the circumstances of the Males' applications. In any event, more than four months had elapsed from the time the debtors and the two vehicles in question had arrived in New York before bankruptcy was filed.

Both the bankruptcy court and the district court also determined that U.C.C. § 9–103(2)(b) was *the provision* of New York law that deals with "continuation of a security interest of a lienholder ... on a non-New York State certificate of title when the vehicle is brought into New York State." The district court held that Chrysler's lien, under the undisputed facts, was no longer "currently effective" at the time of bankruptcy, because the Males had registered their cars in New York and Chrysler had not reperfected its security interests in New York.[4] The district court acknowledged "a split of authority over the proper interpretation of the term, registered, as used under New York's Uniform Commercial Code." The district court relied on *In re Howard,* 9 B.R. 957 (N.D.N.Y.1981), (quoting UCC § 9–103, Comment 4(c)), which expressed concern about a contrary result creating "a danger of deception to third persons." It decided also that *Brewton Trading Corp. v. Midland Bank & Trust Co.,* 115 Misc.2d 475, 454 N.Y.S.2d 510 (Sup.Ct.1982), a decision favoring Chrysler's position, was "not controlling."

White & Summers, in their definitive treatise, deal extensively with perfection of title to vehicles in multiple state transactions. That authority discusses this type of situation which, ideally, should result in the creditor's continued protection if the vehicle is moved to another state:

> What if our debtor immediately applied for a new certificate of title and presumably procured new license plates and thus a new "registration" in the second state? In the normal course of events she would surrender her old certificate of title and a new one would be issued; thus the perfecting acts that had occurred in State 1 would no longer protect her creditor. However, if things work properly, the official in the new state would have listed her creditor as a secured party. That, under the law of the new state, would have perfected the creditor as to the original debt. If, for any reason, that did not occur, the creditor in State 1 has now become unperfected under the "but beyond" provisions of the sentence and is not protected even for four months.

2 James White & Robert Summers, *Uniform Commercial Code* (3d Ed.1988), § 24–22, at 400 (footnotes omitted).

Finally, this authority reaches a conclusion opposite from the one reached by the district court in the instant case:

> In similar fashion, sometimes a student might take his car from Minnesota to Michigan and there "register" the car by procuring Michigan license plates. A student could do that without giving up his Minnesota certificate of title and without procuring a Michigan certificate of title. If the student or the trucker should then go bankrupt, one can anticipate the trustee in bankruptcy will argue that the secured creditor who did no more than get his name listed on the certificate of title in the original state has become unperfected because his four months have passed and the goods are now "registered" in another jur-

---

**3.** The reasons given under the New York statute for not issuing a certificate of title, are: (1) nonpayment of fee; (2) applicant is not the owner; (3) application has false statement; or (4) applicant has failed to furnish required information. N.Y.Veh. & Traf.Law § 2111 (McKinney 1986).

**4.** The district court looked to New York U.C.C. § 9–103(2)(b) for interpretation of the language in New York Vehicle and Traffic Law § 2118(c)(2)(A) (McKinney 1986).

isdiction. Of course, that is a crazy outcome. How else could the creditor who has a security interest in the truck with one certificate of title and 25 registrations perfect its interest? Should the creditor file a financing statement in each of the states where there is registration? We think not.[13] We agree with the outcome of Judge Bare in *In re Nunley* [, 21 B.R. 826, (Bankr.E.D.Tenn.1982) ] and with the dictum in *Strick Corp. v. Eldo–Craft Boat Co., Inc.* [, 479 F.Supp. 720 (W.D.Ark.1979) ]. There the Arkansas court found that "registration" as used in 9–103(2)(b) has occurred only when a new certificate of title has been issued. This decision makes sense even though it does some violence to the complex and messy sentence set out in (2)(b). In a day when virtually every vehicle has a certificate of title and only one certificate of title, it is inconceivable that any lender will be misled by the debtor's mere registration of his truck in a new state.

---

[13] The Code does not recognize filing as effective to perfect a security interest in motor vehicles. UCC §§´ 9–302(3)(a), 9–302(c)(b), 9–302(4). Sec, supra, n. 5.

Moreover, although the Code allows perfection by possession of goods, this may be commercially impractical or, by the terms of the motor vehicle certificate of title statute, invalid. Compare UCC § 9–305 with, e.g., Uniform Motor Vehicle Certificate of Title and Anti–Theft Act § 25.

*Id.*[5] at 401 (citation omitted).

■ We agree with this analysis. While *Brewton Trading Corp., supra,* does not govern the question of New York law, we believe it reaches the right result in a comparable fact situation. *Brewton* held that a secured lender's lien interest reflected on a non-New York certificate of title continues "indefinitely" in New York without the necessity of the secured party to "re-perfect" its lien interest in New York. *Id.* Similarly, *In re Microband Co.*, 135 B.R. 2, 4 (Bankr.S.D.N.Y.1991), held, with respect to certificates of title to vehicles in New Jersey, Michigan, and Maryland, as well as New York, that

A creditor seeking to perfect a security interest in a motor vehicle need not resort

to the filing requirements of Article 9 of the Uniform Commercial Code. States have enacted motor vehicle acts that require certificates of title to denote ownership and security interests in motor vehicles. Generally, a creditor must have its lien noted on the certificate of title to perfect a security interest in a motor vehicle. Thus, the certificate of title serves the same purpose as a financing statement ... to give notice of a party's interest.

In *General Motors Acceptance Corp. v. Waligora*, 24 B.R. 905 (W.D.N.Y.1982), the district court observed that

Under Article 46 [of the New York Certificate of Title Act] a purchaser should be able to determine whether there are any outstanding liens on the automobile merely by examining the face of the *certificate of title* without referring to a central filing repository.

.   .   .   .   .

Under New York law the purchaser does not receive notice of the lien unless the lien is noted on the face of the certificate of title.

*Id.* at 908 (emphasis added). We agree that it is the certificate of title which should control notice to third parties as to the existence of a secured lienholder, not registration or other documentation which may fail to list the security holder's interest.

Perhaps the case closest to the instant controversy on the facts is *General Motors Acceptance Corp. v. Rupp*, 951 F.2d 283, 284 (10th Cir.1991). The debtors purchased a car in Missouri where they resided. A Missouri certificate of title was issued noting GMAC's security interest as GMAC financed the car. GMAC had possession of the title.

Debtors subsequently moved to Utah, taking the vehicle with them. Upon arriving in Utah, they applied for a Utah registration and license for the vehicle. In the registration application, debtors indicated that GMAC had a lien on the vehicle. Based on that information, the application was stamped "REGISTRATION ONLY, NO TITLE

---

**5.** White & Summers also cite, in support of their rationale, *Ford Motor Credit Co. v. Partee*, 514

So.2d 640 (La.App.1987).

ISSUED SUBJECT TO ___ TITLE." On June 2, 1989, Utah issued a registration, but did not issue a new certificate of title.

Thereafter, on February 21, 1990, debtors filed for bankruptcy. Pursuant to 11 U.S.C. § 544, which gives the trustee priority over claims, liens or interests which are not fully perfected at the time the bankruptcy petition is filed, the trustee sought to sell the vehicle free and clear of all liens. He argued that GMAC's security interest was no longer perfected because GMAC failed to reperfect its security interest within four months of when the vehicle was moved to Utah and debtors had "registered" the vehicle in Utah.

*Id.*

■ The court explained that the issue revolved around the meaning of "registered," as found in the Utah statute, whereby "[t]he trustee contends that 'registered' means only the actual registration of the vehicle. GMAC, however, submits that 'registered' means the obtaining of both a registration and a certificate of title." *Id.* at 285. After considering the Utah law, the court held "that both a certificate of title and a registration are necessary to register a vehicle," noting that a majority of jurisdictions have concluded the same thing. *Id.* at 286 (citations omitted).

The trustee, in his brief, points out that the Utah law contained a provision, which was not present in New York law, that "registration of a vehicle under this section does not alter or affect the rights or security interest of any lienholder in another jurisdiction, Utah Code Ann. § 41–1a–223(2)(b)." The Tenth Circuit, however, recognized that a "majority of jurisdictions construing statutes *similar* to section 70A–9–103(2)(b) have concluded that registering requires issuance of a certificate of title." *Id.* at 286 (emphasis added). We agree that, despite the statutory differences between the New York and Utah versions of U.C.C. § 9–103, the New York procedure of issuing registration papers to the Males "is merely administrative, is not a certificate of ownership, and does not permit notation of liens upon it." *Id.* at 287. Thus, we also conclude that since no certificate of

title was issued in New York, the vehicles were not "registered" within the meaning of the U.C.C. as adopted in New York.

We reach this result for the reason that it is a reasonable and permissible interpretation of the applicable commercial law and promotes looking "only to one place—the certificate of title—to discover prior security interests." *In re Paige, Jr.,* 679 F.2d 601, 603 (6th Cir.1982).[6] We reach the same result as did the district court in *Strick Corp. v. Eldo–Craft Boat Co., Inc.,* 479 F.Supp. 720, 725 (W.D.Ark.1979):

> It is the opinion of this Court that the section [UCC 9–103(2)(b)] continues in force the perfection of a security interest noted on a foreign certificate of title until a certificate has been issued by another jurisdiction ... [w]hen this section speaks of "registration," the Court construes the language to contemplate the issuance of an Arkansas title, not the procurement of a "non-negotiable," "non-title" registration in connection with the issuance of a vehicle license.

*See also In re Murray,* 109 B.R. 245, 247 (Bankr.E.D.Mich.1989) ("it appears from the U.C.C. [o]fficial [c]omments that where they wrote 'registered' the drafters meant the act of registration of a certificate of title"); *In re Nunley,* 21 B.R. 826 (Bankr.E.D.Tenn.1982).

We believe this interpretation is a "sensible and practical over-all construction [of the U.C.C.] which is consistent with and furthers its scheme." *Long v. Adirondack Park Agency,* 76 N.Y.2d 416, 559 N.E.2d 635, 559 N.Y.S.2d 941 (1990); *see also Patrolmen's Benevolent Ass'n v. City of New York,* 41 N.Y.2d 205, 359 N.E.2d 1338, 391 N.Y.S.2d 544 (1976). "The meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Deal v. United States,* —— U.S. ——, 113 S.Ct. 1993, 124 L.Ed.2d 44 (1993).

There is no indication here that Chrysler knew that the debtors had moved the vehicles, or their residence, to New York; certainly, there is no indication that Chrysler knew that they had obtained New York license plates for these vehicles. The record

---

**6.** Judge Timbers, sitting by designation, was a member of the panel in the *In re Paige, Jr.* case.

discloses no basis, therefore, for Chrysler to have been aware that it should have taken any further action to perfect its lien other than the action already taken on the New Hampshire certificates of title.

Both the bankruptcy judge and the district court acknowledged a split of authority over the meaning of the term "registered" in the U.C.C., but deemed the case of *In re Howard*, 9 B.R. 957 (N.D.N.Y.1981), to be persuasive, even if it represented only a minority viewpoint. The bankruptcy court noted that *In re Howard* "dealt with an interpretation of New York U.C.C. § 9–103(2)(b) ... generally identical to U.C.C. § 9–103(2)(b) as adopted in various other states," (n. 3), and that Chrysler's [7] view relied "primarily on commentary by recognized UCC scholars."

In its analysis of the New York law, *In re Howard* recognized that the New York Title Act had to be construed by a proper interpretation of U.C.C. § 9–103(2) with regard to whether the Massachusetts certificate of title issued on the subject vehicle was "currently effective" after removal to New York and subsequent bankruptcy of the owner-possessor. The *Howard* court reached a decision that to protect its first lien Chrysler "must actively reperfect" its security interest in New York "within four months or lose perfection," while at the same time indicating that Chrysler's position was "not without merit ... [and] the Court is not unsympathetic to [that] position."[8] *In re Howard*, 9 B.R. at 961–62.

The trustee relies on *In re Tuders*, 77 B.R. 904 (Bankr.N.D.Ala.1987), which involved a security interest on a mobile home. It was significant that mobile homes were "exempt from certificate-of-title laws in Alabama," and the drafters of the U.C.C. "noted that 'mobile homes are not always registered and title certificates are not always issued even in a state which *may have* certificate laws.'" *Id.* at 906–07 (emphasis in original). We find *In re Tuders* accordingly distinguishable on

its facts from this case. The other bankruptcy court decision relied upon by the trustee (and by *In re Howard*) is *In re Hartberg*, 25 U.C.C.Rep.Serv. 1429, 1979 WL 30104 (E.D.Wis.1979). There was no discussion of the meaning of "registered" in this decision, and the court noted, unlike the situation in the instant case, that the creditor "was alerted to the fact that the owners probably moved" from Florida to Wisconsin, and this knowledge was "imputed to the bank," the lienholder reflected on the Florida certificate of title.

■ We do not find it either "natural" or "obvious," as argued by the trustee in his brief that the term "registered," as used in the statute, "signifies that the legislative intent was the obtaining of license plates and a registration card." We agree with the substantial majority of courts' rationale and other persuasive authority, and conclude that New York courts would find that the obtaining of a certificate of title is a necessary part of registration. *See also In re Aguiar*, 116 B.R. 223 (Bankr.D.Idaho 1990).

We are persuaded that New York courts would recognize that to adhere to the result reached by the district court, especially in the absence of any showing that the lien creditor was aware of the debtors' move to New York, would create commercial law havoc in setting aside secured interests noted on title certificates under circumstances akin to those in the instant case. We do not believe that the drafters of the U.C.C. intended the disturbing result reached by the district court's interpretation of the U.C.C. with respect to perfection of title and security interests in multiple state transactions. White & Summers note in their treatise that "[t]oday, all states require the issuance of a 'certificate of title' for certain motor vehicles from the instant they cease to be inventory held for sale." 2 James White & Robert Summers, *Uniform Commercial Code* (3d Ed.1988), § 24–22 (footnote omitted). The authors continued:

"survives movement of the boat to Tennessee under either version of the Uniform Commercial Code." *Id.* at 603. In *Daniels*, the financing bank in Florida prevailed over the Tennessee trustee in bankruptcy.

---

**7.** Chrysler was the financing agency in that case also.

**8.** We note that *In re Daniels*, 93 B.R. 601 (Bankr. M.D.Tenn.1988), cited by the trustee as supporting his position, held that a certificate of title on a boat with a security interest reflected thereon

The issuance of a title certificate is usually a part of the vehicle *registration process*. Ordinarily, when a vehicle registered *and titled* in one state crosses into another, a *new certificate of title* would issue in the second state after surrender of the old, once the second state subjects the vehicle to its own registration *and titling* process.

*Id.* at 398 (emphasis added).

To affirm the decision of the bankruptcy and district courts, we must conclude that New York courts would hold that the New York legislature intended that debtors (and trustees in bankruptcy) may, unilaterally and without notice to a secured first lien creditor in another state, eliminate that creditor's security interest by simply moving to New York with the secured vehicle and obtaining license plates in New York without obtaining a new certificate of title. The result we reach instead involves a reasonable interpretation of the New York statutory scheme without doing violence to the rights of non-negligent creditors who have secured their rights in other jurisdictions, and we believe New York would adhere to this majority view of the U.C.C. Therefore, we hold that the cars were not "registered" in New York thereby leaving Chrysler's security interest perfected in New Hampshire.

Accordingly, we REVERSE the decision of the district court and judgment will be entered for Chrysler.