Michael F. Dubis, Trustee in Bankruptcy, Plaintiff-Appellant,

v.

General Motors Acceptance Corporation, Defendant-Respondent.

Court of Appeals

No. 99–2638. Submitted on briefs August 4, 2000.—Decided August 9, 2000.

2000 WI App 209

(Also reported in 618 N.W.2d 266.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael F. Dubis* of Waterford.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Phillip S. Caruso* of Brookfield.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Michael F. Dubis, as trustee in bankruptcy for Gregg Anderson, appeals from an order granting summary judgment in favor of General Motors Acceptance Corporation (GMAC). The circuit court determined that GMAC held a perfected security interest in Anderson's vehicle against the trustee. Dubis argues on appeal that the security interest was rendered invalid because, pursuant to WIS. STAT. § 409.103(2)(b) (1997–98),[1] Anderson "registered" his vehicle with the state and four months had passed during which time GMAC failed to reperfect its security interest. We conclude that GMAC's security interest remained perfected because § 409.103(2)(b) registration requires a debtor to obtain a certificate of title for a vehicle, not simply a certificate of motor vehicle registration. We affirm the circuit court's order.

## BACKGROUND

¶ 2. The facts are undisputed. Anderson purchased a 1995 Mitsubishi automobile in South Dakota on June 4, 1996, and financed the purchase through GMAC. At the time, Anderson was a resident of South Dakota and a South Dakota certificate of title was issued showing GMAC as lienholder. In December

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version.

1997, Anderson moved to Wisconsin and registered his vehicle with the Department of Transportation (DOT). The DOT, however, did not issue him a certificate of title, only a "certificate of vehicle registration" and license plates.

¶ 3. On June 19, 1998, Anderson filed for bankruptcy in the United States District Court for the Eastern District of Wisconsin. Under 11 U.S.C. § 544 of the Bankruptcy Code, the bankruptcy trustee has priority over claims, liens or interests which are not fully perfected at the time the bankruptcy petition is filed. Dubis claimed that GMAC's security interest in Anderson's vehicle was no longer perfected because Anderson had "registered" the vehicle in Wisconsin consistent with WIS. STAT. § 409.103(2)(b). As such, Dubis sought a court determination that the lien was invalid and that the trustee could preserve the lien for the benefit of the estate under 11 U.S.C. § 551.

¶ 4. In the Bankruptcy Court's order, Judge Russell A. Eisenberg characterized the litigation as "one of an epidemic of identical adversary proceedings all involving the same legal issue: Under [WIS. STAT.] § 409.103(2)(b) does 'registration' require the owner of a motor vehicle to obtain or to seek to obtain a title for the motor vehicle?" The court then directed the parties to resolve this issue in state court because of the issue's grounding in state law.

¶ 5. In November 1998, the parties sought a declaratory action before the circuit court. Dubis then filed a summary judgment motion. The court ruled in favor of GMAC and Dubis appeals.

## DISCUSSION

¶ 6. We review the circuit court's grant of summary judgment using the same methodology as the circuit court. *See City of Beaver Dam v. Cromheecke*, 222 Wis. 2d 608, 613, 587 N.W.2d 923 (Ct. App. 1998). That methodology is well known and we need not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.*; WIS. STAT. § 802.08(2). Because there are no material facts at issue in this case, we must determine which party is entitled to judgment as a matter of law. *See Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 501–02, 577 N.W.2d 617 (1998).

¶ 7. Here, the issue presents a question of statutory interpretation which we review de novo. *See id.* at 502. Statutory interpretation begins with the language of the statute itself. *See Armor All Prods. v. Amoco Oil Co.*, 194 Wis. 2d 35, 50, 533 N.W.2d 720 (1995). If the language is clear and unambiguous on its face, we merely apply that language to the facts at hand. *See Peter B. v. State*, 184 Wis. 2d 57, 71, 516 N.W.2d 746 (Ct. App. 1994). Although we will not look beyond the statute's plain meaning, we do consider its parts in relationship to the whole statute and to related sections. *Cf. Elliott v. Employers Mut. Cas. Co.*, 176 Wis. 2d 410, 414, 500 N.W.2d 397 (Ct. App. 1993). Where the language of a statute is ambiguous, we may then consider legislative intent and collateral sources, including "the scope, history, context, subject matter and object of the statute." *Armor All Prods.*, 194 Wis. 2d at 50 (citation omitted).

¶ 8. The perfection of a security interest in a motor vehicle is governed by WIS. STAT. § 342.19. *See State v. Frankwick*, 229 Wis. 2d 406, 413, 599 N.W.2d 893 (Ct. App. 1999). Relevant to our case are the following provisions:

> **(1)** . . . a security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or secured parties of the vehicle unless perfected as provided in this chapter.
>
> . . . .
>
> **(6)** If a vehicle is subject to a security interest when brought into this state, s. 409.103 (1), (2) and (3) state the rules which apply to determine the validity and perfection of the security interest in this state.

Section 342.19.

¶ 9. WISCONSIN STAT. § 409.103(2) addresses security interests in titled goods transferred to Wisconsin and provides in part:

> **(2)** CERTIFICATE OF TITLE. (a) This subsection applies to goods covered by a certificate of title issued under a statute of this state or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.
>
> (b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until 4 months after the goods are removed from that jurisdiction and thereafter *until the goods are registered in another jurisdiction,* but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certifi-

cate of title within the meaning of this section. (Emphasis added.)

Stated another way, a perfected security interest on an original certificate of title remains perfected for at least four months after property is moved to Wisconsin, unless the certificate is surrendered. After four months, the security interest remains perfected until registration occurs.

¶ 10. The sticking point here is the term "registered." Dubis contends that registration involves the administrative process of filing an application and submitting fees with the DOT in exchange for a certificate of registration and vehicle license plates. *See* WIS. STAT. ch. 341. In this sense, registration does not require obtaining a certificate of title from the state. For support, Dubis cites *Patti v. Barnett Bank (In re Hartberg)*, 25 U.C.C. Rep. Serv. 1429 (1979), which addresses WIS. STAT. § 409.103(2)(b).

¶ 11. GMAC, on the other hand, looks at registration from a commercial law perspective, noting that WIS. STAT. § 409.103(2)(b) is a word-for-word recasting of § 9–103(2)(b) of the Uniform Commercial Code (U.C.C.). GMAC contends that in the context of commercial law, registration requires issuance of a certificate of ownership and that any law relating to vehicle registration is inapposite. GMAC points out that this is the approach taken by a majority of the courts and is more commercially sound.

¶ 12. We begin our analysis by reviewing WIS. STAT. ch. 409. We first observe that para. (2)(a) of WIS. STAT. § 409.103 speaks in terms of certificates of title as to "goods," and para. (2)(b) refers to certificates of title, the removal of "goods" from other jurisdictions and the subsequent registration of those goods. The language in para. (2)(b) makes clear that registration relates to

"goods" generally and that this statute is not intended to exclusively cover motor vehicles. Second, we note that within ch. 409, the only reference to registration is the singular use of "registered" in WIS. STAT. § 409.103(2)(b). As such, where para. (2)(b) speaks of goods in the original jurisdiction having a certificate of title, being "registered in another jurisdiction" suggests that the goods will be *retitled* in the other jurisdiction.

¶ 13. In sum, because WIS. STAT. § 409.103(2)(a) and (2)(b) refer to certificates of title and to "goods," it seems unlikely that the drafters intended the statute's one reference to registration to be narrowly focused on motor vehicle registration. Thus, given the context in which the term "registered" is used in § 409.103(2)(b), we find support for GMAC's position that the term entails obtaining a certificate of title for goods rather than a certificate of vehicle registration.

¶ 14. Within Wisconsin's vehicle registration laws, registration takes on a different meaning. WISCONSIN STAT. § 341.08 sets forth the registration application process for vehicles. Pertinent to this case is § 341.08(3), which states:

> The department may accept an application and complete registration of a vehicle when the evidence of ownership is held by a nonresident lienholder or for other reason is not immediately available and the department is satisfied as to ownership of the vehicle. The title fee shall be collected at the time of registration and retained even though certificate of title is not issued.

Section 341.08(3) describes what occurred in Anderson's case. He applied for the registration of his vehicle while nonresident lienholder GMAC held the title to

the vehicle. The DOT completed Anderson's registration, satisfied as to the vehicle's ownership.[2] Anderson paid the title fee at the time he registered his vehicle "even though *certificate of title [was] not issued." Id.* (emphasis added). Consistent with this provision, Anderson's "Certificate of Vehicle Registration" states, "NO WISCONSIN TITLE ISSUED," and informs that the registration certificate is "Not Valid for Transfer of Ownership."

¶ 15. WISCONSIN STAT. § 341.08(3) works in conjunction with WIS. STAT. ch. 342, which addresses vehicle titling. WISCONSIN STAT. § 342.05(1) instructs that a vehicle owner subject to registration in Wisconsin shall apply for a certificate of title for the vehicle. Section 342.05(3) notes, however, that the certificate of title requirements do not apply "where the law expressly authorizes registration without a certificate of title." Section 341.08(3) expressly permits Anderson's registration of his vehicle without a certificate of title.

¶ 16. That registration of goods under commercial law is conceptually distinct from registration of motor vehicles under state vehicle registration laws has been illustrated by numerous courts.[3] We review two of the cases relied upon by GMAC. In *Chrysler Credit Corp. v. Religa (In re Males)*, 999 F.2d 607 (2nd

---

[2] Anderson stated on his registration application that GMAC was a secured party on the vehicle.

[3] *See, e.g., In re Aguiar*, 116 B.R. 223, 224 (Bankr. D. Idaho 1990); *Frank v. Norbel Credit Union (In re Murray)*, 109 B.R. 245, 248 (Bankr. E.D. Mich. 1989); *Ford Motor Credit Co. v. Partee*, 514 So. 2d 640, 644–45 (La. Ct. App. 1987); *Brewton Trading Corp. v. Midland Bank & Trust Co.*, 454 N.Y.S.2d 510, 511 (N.Y. Sup. Ct. 1982); *Strick Corp. v. Eldo-Craft Boat Co.*, 479 F. Supp. 720, 725 (W.D. Ark. 1979).

Cir. 1993), Chrysler Credit Corporation perfected liens on two vehicles purchased by the Maleses in New Hampshire. When the Maleses moved to New York, they registered the vehicles there, acquiring state license plates and registration papers; New York, however, did not issue new certificates of title. The Maleses then filed for bankruptcy and sought to void Chrysler's liens on both vehicles. The United States Court of Appeals for the Second Circuit determined that registration under New York's statutory equivalent of U.C.C. § 9–103(2)(b) required obtaining certificates of title, not simply the administrative registration of the vehicles. *See In re Males,* 999 F.2d at 614. The court relied upon the rationale in *Strick Corp. v. Eldo-Craft Boat Co.,* 479 F. Supp. 720, 725 (W.D. Ark. 1979), observing that:

> We reach this result for the reason that it is a reasonable and permissible interpretation of the applicable commercial law and promotes looking "only to one place—the certificate of title—to discover prior security interests." We reach the same result as the district court in *Strick Corp.*:

>> It is the opinion of this Court that the section [U.C.C. 9–103(2)(b)] continues in force the perfection of a security interest noted on a foreign certificate of title until a certificate has been issued by another jurisdiction . . . [w]hen this section speaks of "registration," the Court construes the language to contemplate the issuance of an Arkansas title, not the procurement of a "non-negotiable," "non-title" registration in connection with the issuance of a vehicle license.

*In re Males,* 999 F.2d at 613 (citations omitted).

617

¶ 17. In the second case, *General Motors Acceptance Corp. v. Rupp*, 951 F.2d 283 (10th Cir. 1991), GMAC perfected its security interest in the debtors' Missouri vehicle and maintained possession of the certificate of title. When the debtors moved to Utah, they filed for bankruptcy and sought to sell the vehicle free of GMAC's lien. *See id.* at 284. The United States Court of Appeals for the Tenth Circuit held that under U.C.C. § 9–103(2)(b), the term "registered" required both vehicle registration and a certificate of title, noting that the "Utah registration certificate obtained by debtors is merely administrative, is not a certificate of ownership, and does not permit notation of liens on it." *Rupp*, 951 F.2d at 287.

¶ 18. We find the reasoning offered in *Rupp* and *In re Males* compelling. The term "registered" must be interpreted within its context under commercial law and the U.C.C. Critical to commercial law and secured transactions, in particular, are certificates of title because they provide notice of prior security interests. A certificate of vehicle registration, however, does not supply this function. Thus, to allow Anderson to void GMAC's security interest by obtaining a certificate of vehicle registration would send a message that "debtors (and trustees in bankruptcy) may, unilaterally and without notice to a secured first lien creditor in another state, eliminate that creditor's security interest by simply moving to [another jurisdiction] with the secured vehicle and obtaining license plates in [that jurisdiction] without obtaining a new certificate of title." *In re Males*, 999 F.2d at 615. Such a result, the *In re Males* court cautioned, would "create commercial law havoc in setting aside secured interests noted on title certificates . . . ." *Id.* at 614. We doubt our legislature

intended such an effect under WIS. STAT. § 409.103(2)(b).

¶ 19. Finally, we consider the case Dubis describes as the "only reported Wisconsin case that either side could find which addressed this issue." That case, *In re Hartberg*, is a bankruptcy appeal from the United States District Court for the Eastern District of Wisconsin. *In re Hartberg* presents facts identical to this case. The court, interpreting Wisconsin law, concluded that the bank's lien on the debtors' vehicle was invalid because the debtors were issued a certificate of registration from the DOT and because four months had passed in which the bank had failed to perfect its lien in Wisconsin. What is missing from this case, however, is any discussion of the term "registered" within WIS. STAT. § 409.103(2)(b). While the final result in *In re Hartberg* certainly supports Dubis's argument, the court offers no analysis to persuade us that § 409.103(2)(b) registration entails vehicle registration, not commercial law title registration. Because the case fails to address the crux of the issue here and is not binding on this court, we conclude that the decision is inapposite.

## CONCLUSION

¶ 20. We agree with GMAC that it has retained its security interest in Anderson's vehicle despite the vehicle's removal to Wisconsin and the issuance of a Wisconsin vehicle registration certificate and license plates. Given that GMAC's security interest was perfected under a South Dakota certificate of title, no certificate of title was issued by Wisconsin, and the vehicle was never "registered" in Wisconsin pursuant

619

to Wis. Stat. § 409.103(2)(b), GMAC's security interest is therefore valid. The circuit court's order is affirmed.

*By the Court.*—Order affirmed.